UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 94-60055

_____

JOHN E. BUSER, JR., by his
next friends, JOHN E. and
VIRGINIA BUSER,

                                        Plaintiff-Appellant,

                          versus

CORPUS CHRISTI INDEPENDENT
SCHOOL,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

(April 21, 1995)

Before KING, BENAVIDES, Circuit Judges, and LAKE[*], District
Judge.

FORTUNATO P. BENAVIDES, Circuit Judge:

Plaintiff-Appellant appeals the district court's judgment in
favor of Defendant-Appellee, finding that Defendant-Appellee
complied with the procedural mandates of the Individuals with
Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and
acted in good faith in developing and implementing Plaintiff-
Appellant's individualized educational programs.  We affirm.

I.

_____

[*]   District Judge of the Southern District of Texas, sitting
by designation.

John E. Buser, Jr., an autistic twenty-nine year old man, was enrolled in Corpus Christi Independent School District ("CCISD") through the 1985-86 school year. His parents, Dr. John E. Buser, Sr. and Virginia Buser ("the Busers"), actively participated in Admission, Review and Dismissal ("ARD") committee meetings. In these meetings committee members and parents participated in developing individualized educational programs ("IEPs") for students with disabilities.[1] Through the 1984 school year, the Busers approved the IEPs developed for their son in the ARD meetings they attended. However, in a meeting conducted in September 1985, the Busers indicated that they both agreed and disagreed with a proposed IEP. Then at the April 1986 meeting, the Busers disagreed with the ARD committee's recommendations.

Thereafter in May 1986, the Busers requested a due process hearing before the Texas Education Agency, claiming that CCISD failed to provide free appropriate public education under the IDEA and seeking compensatory special education for their son. A hearing was held before the Special Education Officer, who concluded that because John E. Buser, Jr. reached the age of twenty-two prior to the date of the hearing, he had exceeded the age of eligibility for services under the Act.[2]

On July 1, 1987, the Busers filed suit as next friends for their son in federal district court against CCISD. The district court determined that compensatory education is an equitable remedy

_____

[1]   34 C.F.R. § 300.343.

[2]   20 U.S.C. § 1412(2)(B).

-2-

that is not foreclosed by a student reaching twenty-two years of age, and remanded the case to the Texas Educational Agency for a decision on the merits. Upon remand, the Special Education Officer concluded that the IEP developed by CCISD for John E. Buser, Jr. met the standards for free appropriate public education under the IDEA.

The case was reinstated to the district court, where the parties agreed to submit the case to the court based on the record developed before the Special Education Officer with the Texas Education Agency. After reviewing the administrative record, stipulations of the parties and the pleadings, the court found that CCISD complied with the procedural mandates of the IDEA, that the John E. Buser, Jr.'s individual education programs were designed to provide him some educational benefit and that he did receive some educational benefit while attending CCISD. On January 10, 1994, the district court entered a final judgment in favor of CCISD.

## II.

A district court's review of the Special Hearing Officer's decision requires a two-part inquiry. First, the district court must decide whether the state, through its local education agency or intermediate educational unit, has complied with the procedures set forth in the IDEA. *Board of Education, etc. v. Rowley*, 458 U.S. 176, 206-07, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982). Second, the court must determine whether the IEP developed for the disabled child is "reasonably calculated to enable the child to receive educational benefits." *Id.*

-3-

Because the Busers only appeal the district court's decision that CCISD complied with the procedural mandates of the IDEA, our review of this mixed question of law and fact is *de novo*. *Teague Indep. School Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993). Our review of the court's findings of underlying facts is for clear error. *Id.*

III.

Under the IDEA, states are required to provide handicapped children "free appropriate public education." 20 U.S.C. §§ 1400(c) and 1412(1). In order to ensure a handicapped child's right to free appropriate public education, the Act mandates that an IEP be developed for each child. An IEP is a written statement created in a meeting by a representative of the local education agency or an intermediate educational unit. 20 U.S.C. § 1401(a)(20). The IEP must include a statement (1) of the present levels of educational performance of the child, (2) of the annual goals, including short-tern instructional objectives, (3) specific educational services to be provided, (4) projected date for initiation and anticipated duration of services, and (5) evaluation procedures. *Id.*

The IDEA also imposes extensive procedural requirements designed to "guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decision they think inappropriate." *Hoing v. Doe*, 484 U.S. 305, 311-12, 108 S.Ct. 592, 598, 98 L.Ed.2d 686 (1987). These procedures include: (1) an opportunity for the parents to examine all the child's records and to obtain an

independent educational evaluation of the child; (2) written prior notice to the parents whenever the local education agency or intermediate educational unit proposes or refuses to initiate or change the "identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to such child"; and (3) an opportunity for parents to present complaints to the agency or educational unit, including the opportunity for an due process hearing before the state or local educational agency. 20 U.S.C. § 1415(b)(1)(A),(C),(E), and (2). "Adequate compliance" with the procedures will, in most cases, assure the disabled child's substantive right to free appropriate public education has been met. *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3050.

The Busers allege that CCISD violated the procedural requirements enumerated under the IDEA. Specifically, they contend that they did not receive notice, nor were they invited to attend, up to fifteen staff meetings at which their son's progress under his IEP was evaluated. The Busers further contend that at these meetings some of their son's short-term objectives were discontinued or modified. They argue that CCISD's failure to notify them of these meetings at which the school officials discussed their son's progress in achieving short-term objectives constitutes a *per se* violation of the IDEA because the short-term objectives listed in their son's IEPs were "changed," as defined in 20 U.S.C. § 1415(b)(1)(C), by either being discontinued or modified.

The Busers also contend that CCISD did not inform them that they were equal participants in the participation and revisions of their son's IEPs as required under the IDEA.[3]  They argue that the ARD meetings they attended were conducted in such a way that they were led to believe that they would have no impact in the development of their son's IEPs, and that any disagreement they might have with the IEPs would be futile.

We have previously held that a school's failure to meet the IDEA's procedural requirements may alone warrant finding that, as a matter of law, the school has failed to provide free appropriate public education.  *Jackson v. Franklin County School Bd.*, 806 F.2d 623, 629 (5th Cir. 1986).  However, under the facts of this case, we can find no failures on the part of CCISD to meet the procedural requirements mandated by the Act.  The district court was not persuaded that John E. Buser, Jr.'s short-term objectives in his IEPs were "changed" without notice to his parents, and neither are we.[4]  The Busers failed to present any evidence that CCISD actually terminated their son's IEPs.[5]  Additionally, the Busers approved

[3]  *See* 34 C.F.R. § 300 app. C at questions 26, 35, and 55.

[4]  The district court also found that if any of John E. Buser, Jr.'s short-term objectives were terminated, any injury caused could only be *de minimis*.  *See Weil v. Board of Elementary & Secondary Education*, 931 F.2d 1069, 1072 (5th Cir.), *cert. denied*, 502 U.S. 910, 112 S.Ct. 306, 116 L.Ed.2d 249 (1991).  Because we find that CCISD did not violate any of the procedural requirements under the IDEA, we decline to address the issue of when such a violation is only *de minimis*.

[5]  The evidence in the record indicates that short-term objectives were "discontinued" when they were mastered by John E. Buser, Jr.  Mastering a short-term objective is not a "change" under 20 U.S.C. § 1415(b)(1)(C), but merely constitutes the

every IEP developed for their son until the 1985-86 school term. They were notified of the annual ARD meetings, where they were given the opportunity to compare previous IEPs with the new proposed IEP and to participate in the development of the new IEP.[6] An evaluation or recognition of the short-term objectives contained in the IEP is contemplated and essential to carry out the IEP itself. We see no change or modification requiring notice in CCISD carrying out the provisions of an IEP that was instituted with notice to and input from John E. Buser, Jr.'s parents. Moreover, any short-term objectives that may have been improperly marked as discontinued or modified could have been discovered at these annual meetings.[7] Because the Busers did receive notice of the annual ARD meetings, and did participate in those meetings, we find that CCISD "adequately complied" with the notice requirements under the Act,

---

completion of a listed objective in the IEP. The successful completion of a short-term objective is a necessary step in the implementation of the IEP if the annual goal is to be achieved.

   [6] *See* 34 C.F.R. § 300 app. C. Appendix C, entitled "Notice of Interpretation," addresses how the IDEA is to be implemented by the states through a question and answer format. Question ten discusses how often meetings must be held and provides, "Section 614(a)(5) of the Act provides that each public agency must hold meetings periodically, but not less than annually, to review each child's IEP and, if appropriate, revise its provisions. The legislative history of the Act makes clear that there should be as many meetings a year as any child may need."

   [7] Requiring CCISD to notify the Busers every time an informal meeting takes place where John E. Buser, Jr.'s progress is discussed between his teacher and a school administrator would prove extremely ineffective in the administration of John E. Buser, Jr.'s educational development. Rather than enhance his right to free appropriate public education, the interpretation urged by the Busers would hamper the efforts of CCISD to provide John E. Buser, Jr. with an appropriate education and the achievement of the goals set forth in his IEP.

thereby assuring that John E. Buser, Jr.'s substantive right to free appropriate public education was met. *See* *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3050.

Neither can we find evidence that the Busers were barred from participating in the development of their son's IEPs throughout his many years in CCISD. The Busers have not presented any evidence that their son's IEPs were not reasonably calculated to enable him to receive some educational benefit. Nor do they argue that they would have disagreed with the ARD committee members if they were given the opportunity prior to the 1985-86 term. Our review of the record reveals that CCISD provided the Busers numerous opportunities to participate in the educational development of their son, and that the Busers did actively participate in their son's special education program. Therefore, we conclude that CCISD provided the Busers equal opportunity to participate in the development of their son's IEP in compliance with the procedural requirements under the IDEA.[8]

## IV.

For the reasons articulated above, the judgment of the district court is **AFFIRMED**.

---

[8] We decline to address the remaining issues raised on appeal because our disposition of the issues addressed above render the remaining issues unnecessary for the proper determination of this appeal or without merit.