Travis PACE

v.

The BOGALUSA CITY SCHOOL BOARD, et al.

No. Civ.A. 99–806.

United States District Court, E.D. Louisiana.

March 14, 2001.

Charles Nathan Branton, Charles N. Branton, Attorney at Law, Slidell, LA, Kern Anthony Reese, Kern A. Reese, Attorney at Law, New Orleans, LA, Doyle Paul Spell, Jr., Anne Arata Spell, Spell & Spell, Franklinton, LA, for plaintiff.

Ernest Lynwood O'Bannon, Gregory John McDonald, Bienvenu, Foster, Ryan & O'Bannon, B. Ralph Bailey, Law Office of B. Ralph Bailey, Mandeville, LA, Frederick Nolting Dwyer, Frederick A. Miller & Associates, Metairie, LA, Charles Kirk Reasonover, Lamothe & Hamilton, New Orleans, LA, for defendants.

### ORDER AND REASONS

FALLON, District Judge.

Before the Court is plaintiff's appeal of the Louisiana State Level Review Panel's decision on his Individuals with Disabilities Education Act claims pursuant to 20 U.S.C. § 1401, *et seq.* For the following reasons, the decision of the Review Panel is AFFIRMED, and plaintiff's Individuals with Disabilities Education Act claims are DISMISSED.

### I. BACKGROUND

Travis Pace is a Bogalusa High School student with special needs. Born on April 22, 1979, and a student in the Bogalusa school system since 1982, Travis requires special assistance because he has cerebral palsy, scoliosis, and various learning disabilities. He uses a wheelchair because of his orthopedic impairments and needs as-

sistance to use the bathroom because of a bladder condition. Concerned about a lack of facilities at Bogalusa High School accessible to Travis because of his physical limitations, Travis' mother, Olivia Burks, requested a Due Process Hearing on July 21, 1997 claiming that Travis was being denied a free appropriate public education under the Individuals with Disabilities Education Act ("IDEA").

A hearing convened on August 21, 1997 at the Bogalusa City School Board office. During the hearing, Burks complained that Travis lacked an aide to assist him with his bathroom needs. Travis' attorneys also identified problems with the individualized education programs ("IEPs") designed to address his educational needs.[1] At the request of Travis' attorneys, the hearing officer continued the hearing to allow the parties time to revise and complete Travis' IEP.

The hearing resumed on October 6, 1997 after the parties failed to agree on an IEP for Travis. Earlier that morning, the hearing officer and the parties met at the Bogalusa High School Library to inspect the accessibility problems at the school. The hearing then proceeded at the Bogalusa Public Library but was continued to December 10, 1997 at the request of Travis' attorneys so that they could review documents provided by the Bogalusa City School Board ("Bogalusa"). At the December meeting, Travis' attorneys introduced several documents and then walked out of the hearing despite being notified by the hearing officer that the hearing would continue notwithstanding their absence.

Although left with an incomplete presentation by Travis' attorneys, the hearing officer heard testimony and reviewed exhibits to find that Bogalusa had provided Travis with a free appropriate public education.

Travis' attorneys appealed the decision of the hearing officer to the Louisiana State Level Review Panel ("SLRP"). The SLRP reviewed the evidence considered by the hearing officer and found that Travis has received educational benefits and a free appropriate public education from the Bogalusa City school system. *See* SLRP Dec. at 6. Specifically, the SLRP explained that the parties had resolved Burke's concerns about a bathroom aide although it noted that a full-time aide could be of greatest assistance to Travis. *See id.* The SLRP further found that Travis had not been denied a free appropriate public education because of accessibility concerns with other school facilities. *See id.* at 6–7. The IEP presented by the School Board was also found to be appropriate, but the SLRP noted its concern with the transition plan and encouraged Bogalusa to complete it as soon as possible. *See id.* at 7.

Travis Pace now appeals the decision of the SLRP to this Court. He argues that he has been denied a free appropriate public education under IDEA because he was not provided with transition services, neither the SLRP nor the hearing officer reviewed his entire file, the SLRP did not act impartially, his IEPs and transition plans are deficient, and he has received no educational benefit from the instruction provided by Bogalusa.

---

1. An individualized educational program or "IEP" is a written statement which details the present level of a child's educational performance, future goals and objectives for the child, specific services the child is to receive, and a plan for measuring the child's annual progress toward achieving the desired goals. *See* 20 U.S.C. § 1414(d). An IEP is prepared during a meeting between representatives of the school system, the parent or guardian, the child, and other professionals. *See id.* Burks had apparently refused to sign an earlier IEP because she wanted Travis enrolled in a GED program, in a computer class, and assisted by an aide. At the time of the hearing, her main concern was the aide. *See* Tr. Due Process Hr'g, August 21, 1997 at 59.

## II.  ANALYSIS

### A.  IDEA Legal Standard

The IDEA permits aggrieved parties to appeal the findings and decisions of hearing officers and state review panels to a federal district court.  *See* 20 U.S.C. § 1415(i)(2)(A).  When considering an appeal under IDEA, the district court reviews the records of administrative proceedings, hears any additional evidence requested by the parties, and bases its decision on the preponderance of the evidence to determine whether to grant relief it deems appropriate.  *See id.* § 1415(i)(2)(B).  The Court affords "due weight" to the findings of the hearing officer, "but must ultimately reach an independent decision based on a preponderance of the evidence."  *Houston Indep. Sch. Dist. v. Bobby R.,* 200 F.3d 341, 347 (5th Cir.2000) (quoting *Cypress–Fairbanks Ind. Sch. Dist. v. Michael F.,* 118 F.3d 245, 252 (5th Cir.1997), *cert. denied,* 522 U.S. 1047, 118 S.Ct. 690, 139 L.Ed.2d 636 (1998)).  The standard of review, therefore, is "virtually de novo."  *Id.*

Plaintiff argues that Travis did not receive a free appropriate public education as guaranteed by IDEA.  *See* 20 U.S.C. § 1401(8).  "[A] free appropriate public education consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction."  *Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. 176, 188–89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).  The free appropriate public education is tailored to the particular needs of the child by the creation of an individualized education program or IEP. *See id.* at 181, 102 S.Ct. 3034.  Prepared during a meeting between representatives of the school system, the parent or guardian, the child, and other professionals, the IEP is a written statement which details the pres-

ent level of the child's educational performance, future goals and objectives for the child, specific services the child is to receive, and a plan for measuring the child's annual progress toward achieving the desired goals.  *See id.* at 182, 102 S.Ct. 3034; 20 U.S.C. § 1414(d).

To determine whether Travis has received a free appropriate public education, the Court must answer two questions.  "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?"  *See Rowley,* 458 U.S. at 206–207, 102 S.Ct. 3034.  If these two questions can be answered affirmatively, then the state has fulfilled its obligations under the law.  *See id.*  The "free appropriate public education . . . need not be the best possible one, nor one that will maximize the child's educational potential; rather, it need only be an education that is specifically designed to meet the child's unique needs, supported by services that will permit him to benefit from the instruction."  *Cypress–Fairbanks,* 118 F.3d at 247 (citing *Rowley,* 458 U.S. at 188–89, 102 S.Ct. 3034).  Thus, the IDEA only requires states to provide a "basic floor of opportunity consistent with equal protection."  *Rowley,* 458 U.S. at 200, 102 S.Ct. 3034.

The Court in determining whether a child has received a free appropriate public education "must be careful to avoid imposing [its] view of preferable educational methods upon the States."  *Id.* at 207, 102 S.Ct. 3034.  The IDEA creates a presumption in favor of the local school district's educational plan for the child.  *See Teague Indep. Sch. Dist. v. Todd L.,* 999 F.2d 127, 132 (5th Cir.1993).  Parties challenging the plan bear "the burden of showing why the educational setting established

by the IEP is not appropriate." *Christopher M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1291 (5th Cir.1991) (quoting *Tatro v. Texas*, 703 F.2d 823, 830 (5th Cir.1983), *aff'd*, 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984)). Travis Pace, therefore, must show why his educational plan is inappropriate.

## B. Procedural Violations

■ The IDEA requires states and school districts to follow detailed procedural requirements in order "to guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decision they think inappropriate." *Buser v. Corpus Christi Indep. Sch.*, 51 F.3d 490, 493 (5th Cir.1995) (quoting *Honig v. Doe*, 484 U.S. 305, 311–12, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)).

These procedures include an opportunity for the parents of a child with a disability (1) to examine the child's records and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, (2) to obtain an independent educational evaluation of the child, (3) to receive written notice prior to changes in the identification, evaluation or educational placement of the child, and (4) to present complaints concerning the identification, evaluation, or educational placement of the child at a mediation, and if necessary, an impartial due process hearing. *See* 20 U.S.C. § 1415(b), (e), (f); *Buser*, 51 F.3d at 493.

In this case, plaintiff alleges that defendants violated the procedural requirements of IDEA because (1) Travis has not received transition services; (2) the hearing office and state review panel failed to review Travis' entire file; (3) the state review panel did not act impartially; and (4) Travis' evaluations and educational plans contain several deficiencies. *See* Pl.'s Appeal Br. at 3.

### 1. Transition Services

Plaintiff first asserts that defendants neither offered nor provided Travis with transition services.[2] Under IDEA, Travis' IEP must provide a statement of the transition services he needs that focuses on an appropriate course of study and includes a statement of any interagency responsibilities. *See* 20 U.S.C. § 1414(d)(1)(A)(vii). Plaintiff argues that defendants violated the procedural requirements concerning transition services by not inviting other agencies to his transition plan meetings and by not providing any transition services to Travis. *See* Pl.'s Appeal Br. at 4–5.

Neither the due process hearing officer nor the SLRP found due process violations related to transition services. The hearing officer did not identify transition services as a specific cause for concern by plaintiff, and the issue of transition services was not formally raised until the state review hearing. While the SLRP indicated its concern about the transition plan for Travis and recommended that Bogalusa "finish its

---

**2.** "Transition services" are defined by IDEA as:

> [A] coordinated set of activities for a student with a disability that—(A) is designed within an outcome-oriented process, which promotes movement from school to post-school activities, including post-secondary education, vocational training, integrated employment (included supported employment), continuing and adult education, adult services, independent living, or com-

munity participation; (B) is based upon the individual student's needs, taking into account the student's preferences and interests; and (C) includes instruction, related services, community experiences, the development of employment and other post-school adult living objectives, and, when appropriate, acquisition of daily living skills and functional vocational evaluation.

20 U.S.C. § 1401(30).

Transition Plan for Travis as soon as possible," it did not find sufficient evidence to characterize the IEP and services presented by Bogalusa for Travis as procedurally deficient. SLRP Dec. at 7.

■ The administrative and evidentiary record supports the finding by the hearing officer and SLRP that defendants satisfied their procedural requirements concerning transition services under IDEA. First, defendants included a discussion of transition services in Travis' reports and evaluations. Defendants prepared Individual Transition Plans ("ITPs") in association with Travis' IEPs of August 29, 1996 and of May 19, 1997 detailing desired adult outcomes, school action steps, and family action steps. *See* Pl.'s Appeal Br. Ex. 1. Defendants explain that subsequent IEPs have also included transition services. *See* Bogalusa's Appeal Br. at 11. Bogalusa's Reevaluation Report of August 28, 1997 also identified transition services as a need and recommendation for Travis. *See* Pl.'s Appeal Br. Ex. 3, 4. Both parties, therefore, recognized the importance of transition services for Travis.

Second, defendants contacted appropriate state and local agencies to assist in providing Travis with transition services. In a letter dated September 30, 1997, Travis' IEP facilitator communicated to his attorney that she had contacted the Office of Citizens with Developmental Disabilities and that they had requested that Travis' parent or guardian contact them directly to determine his eligibility for services. *See* Bogalusa's Appeal Br. Ex. D. A representative from the Louisiana Rehabilitation Services Department also explained to Travis' IEP facilitator that scheduling conflicts had prevented a rehabilitation counselor from attending Travis' IEP meetings. *See id.* Ex. E. Finally, plaintiff's expert concludes that Travis is receiving appropriate transition services according to his December 10, 1998 IEP. *See* Pl.'s Appeal

Br. Ex. 11. Therefore, the Court finds that defendants satisfied their procedural responsibilities concerning transition services.

## 2. Review of Record

■ Plaintiff next argues that Travis was denied a free appropriate public education because the SLRP failed to review the entire administrative record. Specifically, plaintiff claims that neither the hearing officer nor the SLRP reviewed IEPs from May 19, 1997 and October 3, 1996 before reaching their conclusions. Plaintiff explains that the hearing officer lacked copies of the IEPs and that the SLRP failed to cite them in its decision. The administrative record, however, indicates otherwise. Defendants provided the hearing officer with copies of Travis' IEPs from May 19, 1997 and October 3, 1996, and the hearing officer heard testimony from Travis' IEP facilitator and teacher regarding the IEPs. *See* Hr'g Officer's Findings & Decision ¶ 18. The SLRP also found that the May 19, 1997 IEP was formulated to enable Travis to receive educational benefits. *See* SLRP Dec. at 7. Thus, the evidence from the administrative record demonstrates that both the hearing officer and the SLRP reviewed documents in the record and received testimony concerning their contents. Plaintiffs complaints concerning the review of Travis' file fail to rise to the level of procedural violations under IDEA.

## 3. Impartiality

■ Plaintiff contends that the SLRP was not impartial in reviewing the decision of the hearing officer because members of the panel had reviewed another case involving the same defendants and counsel. Plaintiff, however, offers no evidence to support his contention of partiality. Without specific evidence to the contrary, the

Court finds no reason to question the impartiality of the SLRP.

### 4. Deficiencies in IEPs

■ Plaintiff asserts that the evaluations, IEPs, and ITPs prepared for Travis contained various deficiencies resulting in procedural violations that denied him a free appropriate public education. While defendants must adhere to the procedural requirements of IDEA, "adequate compliance with the procedures will, in most cases, assure the disabled child's substantive right to free appropriate public education has been met." *Buser*, 51 F.3d at 493 (citing *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034). In this case, the hearing officer found a lack of evidence to support a conclusion that Travis was denied a free appropriate public education because of deficiencies in IEPs or other procedural violations. Moreover, the SLRP indicated that plaintiff presented insufficient evidence to demonstrate alleged deficiencies in Travis' IEPs. Plaintiff now cites several procedural violations concerning IEPs in its expert report, but these violations occurred prior to the due process hearing and were not beyond the scope of review of the hearing officer and the SLRP. *See* Pl.'s Appeal Br. Ex. 11. The Court finds that the weight of the credible evidence supports the rulings of the hearing officer and the SLRP regarding any procedural deficiencies in the IEPs. mandated by IDEA because Travis' mother, Olivia Burks, was provided an opportunity for meaningful participation into the decisions affecting Travis and was able to exercise her right to review and challenge the decisions concerning his educational program that she felt were inappropriate.[3] *See Buser*, 51 F.3d at 493.

### C. Meaningful Educational Benefit

■ Plaintiff alleges that Travis has received no educational benefit from the instruction provided by Bogalusa. The Fifth Circuit has established four factors to determine whether an IEP is reasonably calculated to provide a meaningful educational benefit to a child with special needs. *See Bobby R.,* 200 F.3d at 347–48. These factors question whether:

> (1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key "stakeholders"; and (4) positive academic and non-academic benefits are demonstrated.

*Id.* (quoting *Cypress–Fairbanks,* 118 F.3d at 253).

■ The Court first finds that Travis' program is individualized on the basis of his assessment and performance. The August 29, 1996 IEP signed by Burks details Travis' specific needs and how they are being met. *See* Hr'g Officer's Findings & Decision, Sch. Bd. Ex. 4. The IEP explains that Travis requires assistance going to the bathroom and is aided by a certified nursing assistant twice daily and also has a male aide para-educator in the classroom who is available for emergencies and additional bathroom assistance. *See id.* Travis has a key to the elevator to attend upstairs classes although all his classes are now on the first floor. *See id.* He also sits at a special desk to accommodate his wheel chair and has a faculty member assigned to help him evacuate during fire drills. *See id;* ¶ 18. Additionally, Travis has received both physical and occupational therapies even though they were not

---

[3]. The Court also notes that the hearing officer conducted the hearing requested by Burks even though counsel for Travis chose no long-

er to participate. *See* Hr'g Officer's Findings & Decision ¶ 8.

written in to his IEP. *See* Hr'g Officer's Findings & Decision ¶ 18.

The IEP also accounts for Travis' particular academic and vocational needs. Consistent with the neuropsychological evaluation of Children's Hospital submitted by plaintiff, Travis receives special academic assistance from Bogalusa to accommodate his reading, writing, and arithmetic needs. *See* Pl.'s Appeal Br. Ex. 6. The IEP states that Travis is enrolled in a self-contained class because of his need for extra time to complete his work, one-on-one teaching, and comprehension of material. *See* Hr'g Officer's Findings & Decision, Sch. Bd. Ex. 4. With respect to his vocational needs, Travis in enrolled in a GED program and computer training at his mother's request. Travis' IEP facilitator also testified at his hearing that Travis works with a special lap top keyboard and received a computer from Medicaid funds. *See* Hr'g Officer's Findings & Decision ¶ 18. Travis' educational program, therefore, identifies and addresses his particular special needs.

The Court next finds that the program was administered in the least restrictive environment.[4] The least restrictive environment means educating Travis as much as possible with children who have no special needs. *See* 20 U.S.C. § 1412(5)(A); *Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 691 (5th Cir.1996). Travis' educational setting should be based on the needs identified in his IEP, in the school he would otherwise attend if he had no special needs, and according to the special services he requires without respect to removing him from the general student body because of needed modifications in the general curriculum. *See* 34 C.F.R. § 300.552(3).

Travis is taught in the least restrictive environment because he attends his normally assigned school and is mainstreamed as much as possible with his peers.[5] He attends several classes with other children at Bogalusa High School. He has been enrolled in a generic class for students with mild or moderate special needs and receives special education services in a self-contained classroom setting. *See* Bogalusa's Reevaluation Report of August 28, 1997. Travis also has attended GED classes with other students. *See* Hr'g Officer's Findings & Decision ¶ 18.

With respect to his physical needs, Travis' IEP indicates that he receives assistance using the bathroom and during emergencies and also has a personal key to access the elevator. *See id.* Ex. 4. Travis' teachers testified at the due process hearing that he moves throughout Bogalusa High School and never complains about entering and exiting through the doors at the school. *See id.* ¶ 19. Travis' adaptive physical education teacher explained that Travis is capable of getting on and off the field on his own, but that the teacher offers Travis assistance to save time. *See id.* ¶ 20. Moreover, Travis' occupational therapist explained that Travis can use the elevator, eat with other children in the

---

4. The "least restrictive environment" is defined by IDEA as requiring:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.
> 20 U.S.C. § 1412(5)(A).

5. In October of 1996, Travis received homebound services because of problems with his wheelchair. *See* Hr'g Officer's Findings & Decision, Sch. Bd. Ex. 5. The IEP providing these services, however, limited his homestay to the time when his chair was repaired. *See id.*

cafeteria, but required some assistance in the bathroom. *See id.* ¶ 25. Travis' physical therapist similarly stated that he worked with Travis on using his wheel chair and was not aware of any particular difficulties Travis had moving throughout the school. *See id.* ¶ 24.

In addition to the physical assistance designated for Travis in his IEP, additional accommodations were made to Bogalusa High School following plaintiff's request for a due process hearing. Travis' IEP facilitator testified that all his classes were moved to the first floor, two ramps were constructed onto the field, a curb extension was added to the front driveway, new handicap parking spaces were added to the front of the school and the old handicap parking area was paved, new handicap signs were installed, modifications were made to the elevator, and a new water fountain with handicap access was installed. *See id.* ¶ 18. The Court finds, therefore, that Travis has received his education in the least restrictive environment appropriate with his special educational and physical needs.

The Court also finds that the key "stakeholders" provided services in a coordinated and collaborative manner. Although plaintiff only argues that defendants failed to contact stakeholders related to transition services, the evidence indicates that defendants involved the key stakeholders in developing Travis' educational program. Travis' September 26, 1997 IEP meeting was attended by Travis' regular education and special education teachers, school social worker, physical therapist, occupational therapist, adaptive physical education teacher, principal, IEP facilitator, and attorneys. *See* Bogalusa's Appeal Br. Ex. C. While unable to attend the IEP meeting, representatives from the Office of Citizens with Developmental Disabilities and the Louisiana Rehabilitation Services Department were contacted by the IEP facilitator and made aware of Travis' needs. *See* Bogalusa's Appeal Br. Ex. D, E. Thus, Travis was not denied meaningful educational benefit because defendants involved the key stakeholders in his educational program.

Finally, the Court finds that Travis demonstrated positive academic and non-academic benefits from his educational program. Travis' reevaluation report of August 28, 1997 explains that he has made progress in achieving his IEP goals and has improved since his last evaluation. *See* Bogalusa's Reevaluation Report of August 28, 1997; *cf.* Pl.'s Appeal Br. at 10 (noting that Travis failed to meet his goals according to his evaluation of June 6, 1994). Travis has raised his grade point levels in Language Expression, Language Mechanics, Vocabulary, Mathematics Computation, Mathematics Concepts, and Study Skills from April 1993 to April 1996. *See* Bogalusa's Reevaluation Report of August 28, 1997. His teachers note that he is meeting his academic goals although he still has difficulty in writing and history. *See id.* His occupational and physical therapists identify strengths in Travis' mobility as well as continued areas for further development. *See* Occupational & Physical Therapy Evaluation of August 25, 1997. While Travis' school social worker explains that Travis fails to meet his goals when he lacks motivation and misses school, his Occupational and Physical Therapy Progress Report from the third quarter of the 1996–1997 school year states that "Travis has had a good quarter" and appears more motivated and involved. *See* Pl.'s Appeal Br. Ex. 5. Based on the submitted evidence and testimony, the Court finds that Travis has demonstrated positive academic and non academic benefits from his educational program.

· In summary, the Court finds that Travis has received meaningful educational benefit from the educational program provided by defendants. Travis' program is individualized on the basis of his assessment and performance and is administered in the least restrictive environment. Key "stakeholders" provided services in a coordinated and collaborative manner, and Travis has demonstrated positive academic and non-academic benefits from his educational program.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Louisiana State Level Review Panel on plaintiff's Individuals with Disabilities Education Act claims is AFFIRMED, and plaintiff's Individuals with Disabilities Education Act claims are DISMISSED.