IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-10621
Summary Calendar
_____

SAMUEL TYLER W, on behalf of Debbie M,
on behalf of Harvey W,

Plaintiff-Appellant,

versus

NORTHWEST INDEPENDENT SCHOOL DISTRICT,

Defendant-Appellee.

Appeal from the United States District Court for
the Northern District of Texas
(USDC No. 4:01-CV-285-A)
_____

December 16, 2002

Before REAVLEY, BARKSDALE and CLEMENT, Circuit Judges.

PER CURIAM:[*]

The judgment is affirmed. We essentially agree with the district court's reasoning

and add the following:

------------------------

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in
5TH CIR. R. 47.5.4.

1.    Appellate review of the district court's decision is a mixed question of law and fact that we review de novo, but the underlying fact findings of the district court are reviewed only for clear error.  Houston Indep. Sch. Dist. v. Bobby R., 200 F.3d 341, 347 (5th Cir. 2000).

2.    Insofar as appellants Samuel Tyler W (Samuel) and his parents complain that appellee Northwest Independent School District (the school district) failed to comply with the procedural requirement that a regular education teacher be present at 1998-1999 ARD meetings under 20 U.S.C. § 1414(d)(1)(B)(ii), we have held that a failure to comply with a procedural requirement of the Individuals with Disabilities Education Act (IDEA or Act), 20 U.S.C. §§ 1400-1487, may warrant a judicial finding that the district has failed to provide the student with a free appropriate public education, but that "adequate compliance" with the Act's procedural requirements will ordinarily suffice.  See Buser by Buser v. Corpus Christi Indep. Sch., 51 F.3d 490, 493-94 (5th Cir. 1995).  We have not held that a procedural failure necessarily warrants judicial relief.  Moreover, in the pending case, the record indicates that (1) the parents elected to severely limit Samuel's attendance at school and instead chose to school him at home during the relevant period, (2) the school program for three-year-olds like Samuel in 1998-1999 was in any event a program for children with disabilities (PPCD) only available to disabled children and therefore not in our view a "regular education" program, and (3) the PPCD  which Samuel sporadically attended during the 1998-1999 school year consisted of less than three hours per week in a general education setting where Samuel's class interacted with

other students who were not disabled. The IDEA requires the participation of a "regular education teacher of such child" only if the child "is, or may be, participating in the regular education environment." Only by the furthest stretching of the statutory language did a "regular education teacher of such child" in a "regular education environment" even exist.

3. Most assuredly Samuel had no regular or general education teacher who had spent sufficient time with him to compel us to hold that the ARD meetings were not "reasonably calculated to enable the child to receive educational benefits." See Bobby R., 200 F.3d at 346 (internal quotation marks and emphasis omitted). Indeed, his parents would be hard pressed to argue otherwise. Their main dispute with the school district as to the substance of Samuel's education was that they believed Samuel should receive vastly more in-home training than the school district was willing to provide. In other words, they did not want Samuel "mainstreamed" in the general student population, despite the Act's stated preference for mainstreaming disabled students whenever possible. See 20 U.S.C. § 1412(a)(5)(A) (requiring participating states to establish policies and procedures ensuring that "[t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled"). Yet they now complain that the IEPs were fatally flawed because a mainstream teacher did not participate in certain meetings.

4. As to the parents' complaint that the district denied them access to assessment reports prior to the ARD meetings, the Act does not specifically require that such reports

3

be made available to the parents prior to meetings called to develop the IEP. The Act only requires "an opportunity for the parents . . . to examine all records relating to such child and to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education of such child . . . ." 20 U.S.C. § 1415(b)(1). Appellants do not persuade us that the district court clearly erred in finding that "plaintiff's parents very vocally participated in every ARD committee meeting and . . . were not hindered by any alleged withholding of documents," and we have no quarrel with the district court's ultimate conclusion that "the IEPs developed through the Act's procedures were reasonably calculated to enable plaintiff to receive educational benefits."

5. Appellants argue that the district court clearly erred in ignoring a level of hostility between the district and the parents that resulted in a denial of a free appropriate public education for Tyler. Appellants fail to persuade us that hostility between the parents and school district personnel resulted in IEPs that were not reasonably calculated to enable Samuel to receive educational benefits, or that the school district was unable or unwilling to provide him with a free appropriate public education. On the contrary, the district court did not clearly err in finding that school district personnel "selflessly devoted themselves to serving plaintiff's best interest despite their discomfort with plaintiff's parents."

AFFIRMED.

4