**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 26, 2012

No. 11-31032

Lyle W. Cayce
Clerk

CAMBRIDGE INTEGRATED SERVICES GROUP, INCORPORATED,

Plaintiff-Appellant

v.

CONCENTRA INTEGRATED SERVICES, INCORPORATED,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Cambridge Integrated Services Group, Inc. ("Cambridge") appeals the district court's grant of Defendant-Appellee Concentra Integrated Services, Inc.'s ("Concentra") motion for summary judgment. Cambridge and Concentra owed each other contractual duties of defense and indemnification. Cambridge and a subsidiary of Concentra were later named as defendants in a state court lawsuit. Concentra settled and obtained a release that benefitted Cambridge to the extent of Concentra's indemnification obligation; however, Concentra rejected Cambridge's tender of defense. Cambridge filed suit in federal court seeking a declaratory judgment that

No. 11-31032

Concentra owed it contractual defense and indemnification for the costs that Cambridge incurred in settling the state-court litigation. The district court granted summary judgment in favor of Concentra, holding that the settlement satisfied its duty to defend and indemnify Cambridge. We affirm in part and reverse in part, and we remand for further proceedings.

## I. Facts & Proceedings

A.     The Services Agreement

Cambridge is a third-party administrator of workers compensation claims. Concentra provides services to administrators like Cambridge. Concentra and Cambridge entered into a Services Agreement in which Concentra agreed to review medical bills, recommend payments, and provide access to preferred provider organization ("PPO") discounts to Cambridge's clients. Concentra also agreed "to indemnify, defend and hold [Cambridge] harmless from and against any and all claims ... including, reasonable attorneys' fees and litigation expense arising or resulting from any alleged act, error or omission, including any intentional tort, willful misconduct, negligence or gross negligence by" Concentra.[1] Reciprocally, Cambridge agreed to defend and indemnify Concentra for claims based on Cambridge's alleged acts, errors, and omissions. In essence, each party owed the other defense and indemnification only for claims based on its own acts.

Paragraph 9.3(c) of the Services Agreement extended Concentra's defense and indemnification obligations to unclear allegations of wrongdoing:

> If the alleged wrongful conduct cannot be determined from the allegations as pleaded, CONCENTRA agrees to defend and indemnify pursuant to the language in paragraph (a) above, of this

---

[1] A separate provision reiterated that Concentra owed defense and indemnity for claims against Cambridge "involv[ing] any alleged act, error or omission, including any intentional tort, willful misconduct, negligence or gross negligence by" Concentra.

2

No. 11-31032

Agreement, until the conduct complained of is clarified during the course of the litigation, at which time the defense and indemnity obligation shall promptly be determined under paragraphs (a) and (b) above; provided, however, in the event it is determined that [Cambridge] is obligated to indemnify CONCENTRA, [Cambridge] shall promptly reimburse CONCENTRA for fees and expenses incurred by CONCENTRA up to the time of such determination.

B.    The *Gunderson* Case and the Focus Settlement

In 2004, Cambridge and FOCUS Healthcare Management Inc. ("Focus"), a subsidiary of Concentra, were among a number of parties named as defendants in *Clark A. Gunderson, M.D., et al. v. F.A. Richard & Associates, Inc., et al.*, a suit filed in the state district court of Calcasieu Parish, Louisiana ("*Gunderson*"). The *Gunderson* plaintiffs, a proposed class of medical providers, alleged that the defendants imposed PPO reductions on workers compensation payments without complying with the notice requirements of Louisiana's Any Willing Providers Act.[2]  Cambridge was also a named defendant in related proceedings filed in Louisiana's Office of Workers' Compensation ("OWC") by members of the *Gunderson* class.[3]

In January 2007, Focus and Concentra settled with the *Gunderson* plaintiffs for $12 million ("the Focus Settlement").  Although Cambridge was not a party to the Focus Settlement and did not participate in negotiating it, the *Gunderson* plaintiffs also released their claims for "Liability" against Cambridge. The Focus Settlement defined the liability released by the plaintiffs as follows:

---

[2] La. Rev. Stat. § 40:2203.1.

[3] The *Gunderson* plaintiffs also asserted claims arising from workers compensation payments made by Cambridge but reviewed by contractors other than Concentra or its subsidiary.

No. 11-31032

With respect to the Related Parties,[4] the term "Liability" shall mean and refer to all claims and liabilities of the Related Parties arising out of the Episode, regardless of whether the claims, liabilities, and/or resulting damages are not yet known or manifested or whether such claims, liabilities, and/or resulting damages are known or unknown, asserted or unasserted, but only to the extent that Focus, Concentra, and/or Broadspire is liable to the Related Parties for contribution, indemnity, or by contract as a result of the Episode and specifically does not include the Independent Liability of the Related Parties under La. R.S. 40:2201, *et seq.* and La. R.S. 23:1021, *et seq.*

(emphasis in original).[5]

The *Gunderson* plaintiffs did not, however, release their claims against Cambridge for any "Independent Liability," defined as follows:

The term "Independent Liability" shall mean and refer to any and all liability of a Related Party, other than that for which Focus, Concentra, and/or Broadspire is liable through indemnification, contribution, or contract.

Finally, Paragraph 8.6 of the Focus Settlement prohibited the *Gunderson* plaintiffs from settling with Cambridge without obtaining a release of Cambridge's claims against Concentra:

---

[4] The parties to this appeal agree that Cambridge is a Related Party.

[5] The "Episode" is defined to "mean and refer to and include each and every event, circumstance, and/or situation upon which allegations have been made or could have been made for underpayment, penalties, recovery of damages, or other relief or remedy, arising out of the alleged violations of one or more of the requirements of La. R.S. 40:203.1 and/or the Louisiana Workers' Compensation Law, La. R.S. 23:1021, *et seq.*, during the period from January 1, 2000 through the Effective Date as a result of the use of a PPO owned, operated, or contracted with Focus or Concentra."

4

No. 11-31032

> The Class, each Class Member, and the PSC agree not to compromise, settle, release, waive, forfeit, surrender, acquit, dismiss, or discharge any claim against a Related Party, without first obtaining an express, written agreement by which such Related Party compromises, settles, releases, waives, forfeits, surrenders, acquits, dismisses, and forever discharges any and all claims for contribution, indemnity, subrogation, breach of contract, statutory violation, and/or tort related to the Episode that it may have against Focus, Concentra, and/or Broadspire.

The state court granted preliminary approval of the Focus Settlement in January 2007.

The Focus Settlement did not result in Cambridge's dismissal from *Gunderson* or from any OWC proceedings. Cambridge took the position that (1) it had contractually delegated the state-law notice duty to Concentra, (2) it could seek indemnification from Concentra for any claims against it, and (3) the *Gunderson* plaintiffs' post-settlement claims had therefore been released. Accordingly, Cambridge wrote to Concentra in January 2008, requesting "written confirmation that Focus's indemnity obligations specifically apply to the Louisiana class action and OWC proceedings so that Cambridge can seek appropriate orders dismissing it from these Louisiana litigations." Concentra declined to provide that confirmation. Early in February 2008, Cambridge formally demanded defense and indemnification from Concentra with respect to *Gunderson* and the OWC proceedings. Concentra refused to provide a defense or indemnification.

The following month, Cambridge filed the instant declaratory judgment action in the district court, seeking a holding that Concentra owed it defense and indemnification for any future liability in *Gunderson* and in the OWC

5

proceedings.    Concentra sought and obtained a stay of this action, and *Gunderson* proceeded against Cambridge.

C.    The Cambridge Settlement

Cambridge did not assert the Focus Settlement release as a defense in *Gunderson*.  Instead, in November 2009, Cambridge settled with the *Gunderson* plaintiffs ("the Cambridge Settlement").[6]    The Cambridge Settlement incorporated Paragraph 8.6 of the Focus Settlement, but it also included language appearing to reserve some claims against Concentra:

> The Cambridge Interests agree to release [Concentra] to the extent, and only to the extent, that such release is required by Paragraph 8.6 of the Focus Settlement  Agreement with Plaintiffs.    The Cambridge Interests retain all rights to assert claims outside of Paragraph 8.6, including claims arising from [Concentra's] breach of their contractual, tort, or indemnity obligations with respect to the defense of the Gunderson matter, the OWC proceedings, or any applicable arbitration proceedings.

In May 2010, Cambridge sought and obtained a lift of the stay in the instant district court declaratory action and amended its complaint to pursue damages for the amounts it spent defending and settling *Gunderson*.  Concentra responded by filing a motion for summary judgment, contending that the Focus Settlement satisfied its defense and indemnification obligations to Cambridge by releasing Cambridge from any possible liability for which indemnification might be owed.  Concentra asserted in the alternative that Cambridge had released all claims for defense and indemnification in the subsequent Cambridge Settlement.

---

[6] Cambridge paid a total of $10,000,000 to settle *Gunderson*.  Because *Gunderson* also involved claims arising out of workers compensation payments which Concentra did not review, Cambridge seeks only $5,000,000 of the total settlement amount from Concentra.

No. 11-31032

The district court granted Concentra's motion for summary judgment, holding that Concentra had satisfied its defense and indemnification duties under the Services Agreement by negotiating the Focus Settlement and obtaining, for the benefit of Cambridge, a release of all Liability for which Cambridge could have received indemnification. Cambridge timely appealed.

## II. Analysis

A.    Standard of Review

We review a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court.[7]   Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] When reviewing a summary judgment, we construe all the evidence and reasonable inferences in the light most favorable to the nonmoving party.[9]  We are "not limited to the district court's reasons for its grant of summary judgment" and "may affirm the district court's summary judgment on any ground raised below and supported by the record."[10]

Concentra urges that because "state law governs issues in dispute, some deference is due to the district court's interpretation of the law of the state in which it sits."[11] The Supreme Court's opinion in *Salve Regina College v. Russell* rejected that proposition.[12] Thus, our more recent cases "afford no deference to

---

[7] *United States v. Caremark, Inc.*, 634 F.3d 808, 814 (5th Cir. 2011).

[8] Fed. R. Civ. P. 56(a).

[9] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010).

[10] *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 478 (5th Cir. 2008).

[11] *Villanueva v. CNA Ins. Cos.*, 868 F.2d 684, 685 (5th Cir. 1989).

[12] 499 U.S. 225, 234, 240 (1991) (holding that "appellate deference to the district court's determination of state law is inconsistent with the principles underlying this Court's decision in Erie" and that a court of appeals "err[s] in deferring to the local expertise of the district

7

the district court's determinations of issues of law of the state in which that court's chambers are located."[13]

B.    Duty to Indemnify

"Under Louisiana law, indemnity provisions are construed in accordance with general rules governing contract interpretation.  When the terms of a contract are unambiguous and lead to no absurd consequences, we interpret them as a matter of law."[14]  The district court held as a matter of law that the terms of the Focus Settlement satisfied Concentra's contractual duty to defend and to indemnify Cambridge.  We agree with respect to the duty to indemnify, but we disagree with respect to the duty to defend.

Through the Focus Settlement, Concentra obtained a release of the *Gunderson* plaintiffs' claims against Cambridge for "Liability," but not for "Independent Liability."  We repeat for emphasis that, in the Focus Settlement, Liability is defined as all claims for which Concentra owed Cambridge indemnification; Independent Liability is defined as everything else.  Thus, the scope of the release was defined by and coextensive with Concentra's duty to indemnify Cambridge under the Services Agreement.  Any claim against Cambridge for which it could have sought indemnification ceased to exist by operation of the release and under *res judicata*, thus relieving Cambridge of any liability for Concentra's conduct.  We agree with the district court that

---

court").

[13] *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 642 F.3d 506, 509 (5th Cir. 2011).

[14] *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996).

No. 11-31032

Concentra preemptively satisfied its duty to indemnify Cambridge by securing the release from the *Gunderson* plaintiffs on Cambridge's behalf.[15]

C.    Duty to Defend

The district court did not distinguish between Concentra's duty to indemnify and its duty to defend. But "[t]he duty to indemnify and the duty to defend clearly are separate and distinct duties."[16] We conclude that summary judgment was inappropriate with respect to the issue of Concentra's duty to defend Cambridge.

Concentra owed a duty to defend Cambridge against "any and all claims … arising or resulting from" Concentra's conduct. And, if the conduct alleged to give rise to a claim could not be determined from the pleadings, Concentra's duty to defend continues "until the conduct complained of is clarified during the course of the litigation."[17] By definition, all claims for Liability that were released arose from Concentra's conduct. Therefore, if any claims that had been released were subsequently asserted against Cambridge, or if it was unclear from the allegations whether the subsequently asserted claims had been released, Concentra remained contractually obligated to provide Cambridge a defense.

After the Focus Settlement, the *Gunderson* plaintiffs pursued claims that they contended were for unreleased Independent Liability arising solely from Cambridge's own conduct. And, the *Gunderson* plaintiffs presumably would not

---

[15] *See* La. Civ. Code art. 1854 ("Performance by the obligor extinguishes the obligation.").

[16] *Fed. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 638 So. 2d 1132, 1137 (La. Ct. App. 1994).

[17] Concentra argues that paragraph 9.3(c) of the Services Agreement was an "automatic self-termination provision." Concentra cites no authority for that proposition and does not explain how the duty to defend could be extinguished before "the conduct complained of is clarified during the course of the litigation."

knowingly pursue claims that had been released. But Cambridge was not a party to the Focus Settlement and thus was not bound to agree with the *Gunderson* plaintiffs that it had any unreleased Independent Liability whatsoever. Rather, just as the *Gunderson* plaintiffs were entitled to attempt to prove any Independent Liability that they could based on Cambridge's own conduct, Cambridge was entitled to prove that the claims arose solely from Concentra's conduct and thus had been totally released.

When, on this record, we draw every reasonable inference in favor of Cambridge, we cannot say as a matter of law that all of the claims asserted by the *Gunderson* plaintiffs following execution of the Focus Settlement arose exclusively from Cambridge's conduct.[18] In other words, the nature of those plaintiffs' post-settlement allegations was unclear: The release might have served as a defense to some of those claims.[19] As the matter thus remained to be clarified through litigation, Concentra's duty to defend was triggered. By rejecting Cambridge's tender, Concentra breached its duty to defend until the conduct underlying those claims was "clarified during the course of the litigation." Accordingly, the district court erred as a matter of law when it granted summary judgment to Concentra with respect to its duty to defend Cambridge.

D.    The Cambridge Settlement Release

Although the district court granted summary judgment on an incorrect basis, we may affirm such a judgment "on any grounds supported by the

---

[18] At a state court hearing, for example, counsel for the *Gunderson* plaintiffs indicated that the post-settlement claims needed to be clarified during the course of the litigation: "Now, until you go case by case with each doctor and the bills and what happened and what didn't happen, we won't know what else they may have done wrong, and they would be responsible for under independent liability."

[19] The release would not have been a complete defense to all of the *Gunderson* plaintiffs' claims because, as explained above, some of the class members received payments which had not involved Concentra or its subsidiary.

record."[20] The district court did not reach Concentra's alternative argument that Cambridge released its claims for indemnification or breach of the Services Agreement through the Cambridge Settlement. A release in a written settlement agreement is subject to the general rules of Louisiana contract interpretation.[21] "Interpretation of a contract is the determination of the common intent of the parties."[22] As Louisiana law construes releases narrowly, Concentra has the burden of proof "to establish the requisites for a valid compromise, including the parties' intent to settle the differences being asserted in the action" to which the release is asserted as a defense.[23]

Paragraph 8.6 of the Focus Settlement contractually prohibited the *Gunderson* plaintiffs from settling with Cambridge without also securing a release of Cambridge's claims against Concentra. Paragraph 7(D) of the Cambridge Settlement incorporates this requirement and releases Cambridge's claims against Concentra "to the extent, and only to the extent, that such release is required by Paragraph 8.6 of the Focus Settlement Agreement." But Paragraph 7(D) also states that Cambridge "retain[s] all rights to assert claims outside of Paragraph 8.6, including claims arising from Focus, Concentra, or Broadsphire's [sic] breach of their contractual, tort, or indemnity obligations with respect to the defense of the *Gunderson* matter, the OWC proceedings, or any applicable arbitration proceedings."

Paragraph 7(D) is in tension with itself. The first sentence expresses Cambridge's intent to release all claims against Concentra; the second sentence, however, expresses an intent to retain an indemnification claim against

---

[20] *Lifecare Hosps., Inc. v. Health Plus of La., Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

[21] *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 637 (5th Cir. 2002).

[22] La. Civ. Code art. 2045.

[23] *See Young*, 294 F.3d at 637.

Concentra. Construing Paragraph 7(D) narrowly, as is required by Louisiana law, we find it internally inconsistent and ambiguous as to which claims Cambridge intended to release. Accordingly, we cannot say that Concentra has borne its burden to show that Cambridge's present claims come within the ambit of the release. The summary judgment cannot be affirmed on that basis.

As a drafter of the Cambridge Settlement, Cambridge is at least partially responsible for the ambiguity in Paragraph 7(D). Perhaps it is problematic to allow Cambridge to benefit from that ambiguity, but on these facts, the only reason a release exists at all is because the original Focus Settlement preemptively required the *Gunderson* plaintiffs to secure one. Cambridge was not a party to the Focus Settlement and was under no independent contractual obligation to release Concentra. If the release does not achieve all the results that Concentra wanted, its remedy should lie against the *Gunderson* plaintiffs.

E.    Remand

Because we must remand on the issue of the duty to defend, Cambridge is entitled to prove the quantum of damages caused by that breach, including fees and costs of defense in *Gunderson*. It is impossible for us to tell from the present record what those defense costs or other damages might have been. This is particularly true because Concentra's duty to defend would have lasted only "until the conduct complained of is clarified during the course of the litigation." The district court is in the better position to address these fact-intensive issues on remand.

Concentra raises other arguments in favor of affirming the summary judgment, none of which avoid the need for a remand. First, Concentra claims that the PPO discounts it recommended to Cambridge pursuant to the Services Agreement, which were the subject of at least part of the claims in *Gunderson*, were permissible under Louisiana law. But Cambridge's suit is premised on breach of the duty to defend under the Services Agreement. Whether

Concentra's conduct complied with Louisiana law may have been a defense to the state-law claims in *Gunderson*, but that does not defeat Concentra's duty to assert that defense on Cambridge's behalf.

Second, Concentra claims that Cambridge failed to mitigate its damages when it did not assert the Focus Settlement release as a defense in *Gunderson*. According to Concentra, if the *Gunderson* plaintiffs were indeed pursuing claims for released Liability, then Cambridge had a complete defense and could have mitigated all of its damages instead of settling the claims.[24]   But even if Cambridge had successfully asserted the release as a defense, it still would have incurred defense fees and costs that Concentra was contractually obligated to provide, for the reasons explained above.  Cambridge's strategic decision to settle instead of asserting the release might be relevant to a determination whether Concentra is liable for any portion of the amounts that Cambridge paid to settle the case, or whether Cambridge's defense fees and costs could have been reduced by promptly asserting the release as a defense.   It does not, however, categorically defeat the claim for the damages Cambridge actually incurred in litigating *Gunderson* after Concentra breached the Services Agreement by rejecting the tender of defense.  We leave the question of damages for the district court to consider in the first instance on remand.

## III. Conclusion

For the foregoing reasons, we affirm the summary judgment of the district court dismissing Cambridge's claims against Concentra for indemnification, but we reverse the summary judgment with respect to Concentra's duty to defend. AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

[24] Conversely, if the release did not defeat any of the *Gunderson* plaintiffs' claims because those claims were for unreleased Independent Liability, then those claims fell outside Concentra's duty to defend and indemnify.