# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 27, 2012

No. 11-50956

Lyle W. Cayce
Clerk

R.P., by next friend R.P. and C.P.,

Plaintiff - Appellant,

v.

ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT,

Defendant - Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and DeMOSS and GRAVES, Circuit Judges.

CARL E. STEWART, Chief Judge:

Plaintiff-Appellant R.P., a student in the Alamo Heights Independent School District ("AHISD"), brought suit by her parents, R.P. and C.P., against Defendant-Appellee AHISD under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*, for allegedly failing to provide her with a free appropriate public education, as required by the IDEA. The district court granted AHISD's motion for summary judgment. R.P. now appeals. We AFFIRM.

## I.  BACKGROUND

On appeal, R.P. asserts that she was denied a free appropriate public education ("FAPE") for three reasons: (1) her parents were not permitted to fully

No. 11-50956

participate in Admissions, Review, and Dismissal ("ARD")[1] committee meetings; (2) AHISD delayed providing her with an assistive technology ("AT") device[2] because school personnel did not timely complete an AT evaluation; and (3) AHISD did not conduct a functional behavioral assessment ("FBA") before developing a Behavior Intervention Plan ("BIP") for her.[3]

## A.    Facts

At the time of R.P.'s due process hearing, she was a ten-year old student in AHISD who was eligible for special education placement, programs, and services as a child with autism, mental retardation, and a speech impairment.

R.P. is essentially non-verbal, and so a variety of communication methods, including sign language, picture cards, and voice communication devices, have been used with her at school to help her communicate.

The record shows that in kindergarten, R.P. was using a picture communication system, which AHISD refers to as a Picture Exchange Communication System ("PECS"). When R.P. was in first grade (Fall 2006-

---

[1] In Texas, members of the ARD committee prepare an eligible student's IEP. The committee includes the parents of the child with the disability, at least one of the child's regular education teachers, at least one special education teacher, a representative of the school district, an "individual who can interpret the instructional implications of evaluation results, other individuals who have knowledge or special expertise regarding the child," and the child, if appropriate. *Houston Indep. Sch. Dist. v. V.P.*, 582 F.3d 576, 580 n.1 (5th Cir. 2009) (internal quotation marks omitted) (citing 20 U.S.C. § 1414(d)(1)).

[2] Under the IDEA, an assistive technology device is defined as "any item, piece of equipment, or product system, whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve functional capabilities of a child with a disability." 20 U.S.C. § 1401(1)(A).

[3] R.P. raises two additional issues in her brief: (1) the district court erred in refusing to admit additional ARD tapes into evidence and (2) the district court applied the improper standard of review. However, R.P. explicitly waived these issues during oral argument.

Although R.P.'s initial complaint before the Texas Education Agency contained numerous additional issues, she has waived them by not briefing them before this court. *See* Fed. R. App. P. 28(a)(9)(A) (stating that an appellant's brief must contain her "contentions and the reasons for them").

2

No. 11-50956

Spring 2007), R.P.'s parents purchased a voice output device called the Go Talk because they were frustrated with her progress. At school, R.P. continued primarily to use PECS, but the school also began using the Go Talk on a trial basis. At the end of the year, R.P.'s occupational therapist reported that R.P.'s "communication system is working well for her. . . . Her communication system is constantly evolving with the progress she makes." The occupational therapist also noted that R.P. was working more successfully with PECS than with the Go Talk.

At the beginning of her second grade year (Fall 2007-Spring 2008), AHISD completed a Full Individual Evaluation ("FIE") for R.P. in order to designate her as a child with autism. The FIE report noted that R.P. was "most comfortable using [PECS] for understanding commands and also indicating her wants and desires," and it expressed the view that a speech output system should not be considered until her language further developed. Nonetheless, AHISD continued to assess R.P.'s use of the Go Talk, and her teachers used it for mathematics and reading. R.P. continued to make progress toward her language objectives and reading IEP. However, in the ARD meeting at the end of the school year, R.P.'s father ("R.L.P.") reported that R.P.'s expressive language at home had decreased. Therefore, at the end of the school year AHISD staff conducted three in-home sessions focused on PECS and the Go Talk in order to transfer R.P.'s successful use of the communication system to the home environment. The ARD committee also requested that AHISD complete an AT assessment for communication by October 1, 2008.[4]

The ARD committee convened in October of R.P.'s third grade year (Fall 2008-Spring 2009), but the AT assessment was not presented. Nor was it presented at a December 2008 ARD meeting, which was convened after R.P.'s

---

[4] AHISD did not enter the tape of this ARD meeting into evidence, so we could not ascertain the exact parameters of or reasons for this evaluation.

3

principal, Cordell Jones, cut the October meeting short due to R.L.P's behavior. In December 2008, R.L.P. sent Jones a letter asking about the status of the AT assessment due October 1, 2008. In January 2009, Susan Houser, a licensed specialist in school psychology who was part of the ARD committee, sent an e-mail to R.P.'s speech therapist inquiring about the status of the assessment. In the due process hearing, Houser testified that she subsequently learned the assessment had been completed. At the year-end ARD meetings, held in late May and early June 2009 to prepare R.P.'s 2009-2010 IEP, the ARD committee finally discussed the results of the AT assessment. Also at the meeting, R.L.P. raised concerns about AHISD's slow implementation of a voice output device for R.P., and a school employee informed him that the school was in the process of implementing a voice output device for R.P. to use. The ARD committee then requested a second AT evaluation. Shortly thereafter, R.P's mother, C.P., wrote Jones a letter, raising concerns about the delay that would result from a further "data gathering" process.

Meanwhile, the record shows that R.P. was using a more advanced voice output device, known as a DynaVox, no later than April 2009. Some of her IEP goals also required the use of a voice output device. She was not, however, issued her own device, but instead she borrowed devices from other students. Additionally, AHISD began trying an additional device, the Tango, in an effort to determine which device was best suited for R.P.

AHISD completed the second AT evaluation at the beginning of R.P.'s fourth grade year (Fall 2009-Spring 2010), and she began using the DynaVox regularly. R.P.'s parents and her teachers testified that she made significant progress with the aid of the DynaVox.

## B.    Procedural History

On November 24, 2009, R.P. filed a written request for a due process hearing with the Texas Education Agency ("TEA"). *See* 20 U.S.C. § 1415(b)(6),

(f). R.P. asserted a number of defects in AHISD's handling of her education, which she alleged amounted to a denial of FAPE. A two-day due process hearing was held March 8, 2010 and March 9, 2010 after which the TEA hearing officer issued a lengthy decision, determining that R.P. had not been denied a FAPE and finding for AHISD on all claims, even though it also noted that AHISD had not met its obligations under the law in all circumstances. None of those failures are relevant to this appeal.

R.P. then filed suit in the district court, *see* 20 U.S.C. § 1415(i)(2), and AHISD subsequently filed a motion for summary judgment. The district court's order found that R.P. had not been denied a FAPE and entered judgment on behalf of AHISD. R.P. moved for reconsideration of the judgment, which the district court denied in a text order. This appeal followed.

## II. STANDARD OF REVIEW

A district court conducts a "virtually de novo" review of the due process hearing officer's decision. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997) (citation and internal quotation marks omitted). Thus, while the district court must give "due weight to the hearing officer's findings, the court must ultimately reach an independent decision based on a preponderance of the evidence." *Id.* (citation and internal quotation marks omitted).

We then review the district court's decision *de novo*, as a mixed question of law and fact. *Id.* (citation omitted). We review the district court's findings of underlying fact, such as "findings that a disabled student obtained educational benefits under an IEP," for clear error. *Id.* (citations omitted). Under a clear error standard, we will not reverse the district court unless we are "left with a definite and firm conviction that a mistake has been committed." *Houston Indep. Sch. Dist. v. V.P.*, 582 F.3d 576, 583 (5th Cir. 2009) (citation and internal quotation marks omitted). "The party challenging the appropriateness of an IEP

No. 11-50956

bears the burden of demonstrating that the IEP and resulting placement were inappropriate under the requirements of the IDEA." *Id.* (citation omitted).

Pursuant to the *de novo* standard, we have carefully reviewed the extensive record associated with this case, including over 4,000 pages of exhibits, transcripts from the due process hearing, and over 10 hours of tape-recorded ARD committee meetings.

## III.  DISCUSSION

### A.     Motion for Reconsideration

As a threshold matter, AHISD asserts that R.P.'s notice of appeal was only from the district court's denial of her motion for reconsideration.[5] AHISD argues that R.P.'s motion did not address the district court's interpretation of the IDEA or her allegations that she was denied a FAPE.  AHISD therefore claims that R.P.'s substantive challenges are not properly before this court.  We disagree.

Under the Federal Rules of Appellate Procedure, "[t]he notice of appeal must . . . designate the judgment, order, or part thereof being appealed."  Fed. R. App. P.  3(c)(1)(B).  This court treats notices of appeal relatively liberally "where the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party."  *C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1056 (5th Cir. July 1981) (per curiam) (citation omitted).  "[W]e have specifically treated appeals of [59(e) motions for reconsideration] as appeals of the underlying judgment when the intent to do so was clear."  *Alberta Energy Partners v. Blast Energy Servs., Inc.* (*In re Blast*

---

[5] In AHISD's initial brief on appeal, it also asserted that we lacked jurisdiction to hear this appeal because R.P.'s notice of appeal was untimely.  As AHISD recognized in a letter subsequently filed pursuant to Federal Rule of Appellate Procedure 28(j), R.P.'s motion for reconsideration was timely filed twenty-eight days after the judgment was entered in the docket.  *See* Fed. R. App. P. 4(a)(7)(A).  Accordingly, her deadline to file a notice of appeal was tolled until the district court entered an order disposing of her motion for reconsideration.  *Id.* at 4(a)(4)(A).  After the district court entered such order, R.P. timely filed her notice of appeal. Therefore, we have jurisdiction to review this appeal.

No. 11-50956

*Energy Servs, Inc.*), 593 F.3d 418, 424 n.3 (5th Cir. 2010) (citations omitted). The purpose of the notice of appeal is to provide sufficient notice to the appellees and the courts of the issues on appeal. *See, e.g.*, *Hernandez v. Thaler*, 630 F.3d 420, 425 n.15 (5th Cir. 2011) (per curiam) (quoting *Smith v. Barry*, 502 U.S. 244, 248-49 (1992)); Fed R. App. P. 3 advisory committee's note ("[S]o long as the function of notice is met by the filing of a paper indicating an intention to appeal, the substance of the rule has been complied with.").

Here, AHISD has not asserted it was prejudiced by R.P.'s notice of appeal, which stated that it was an appeal from the "Order Denying Motion for Reconsideration." Therefore, determining whether to treat R.P.'s notice of appeal as an appeal from the underlying judgment turns on whether the intent to appeal the merits of the judgment was "apparent." *C.A. May Marine Supply Co.*, 649 F.2d at 1056.

R.P.'s motion for reconsideration was supported by a memo seeking broad relief from the district court's summary judgment order. The memo asked the district court to reconsider its entry of summary judgment and concluded that "[b]y dismissing as incompetent summary judgment evidence all of the administrative record citations in the Plaintiff's response, the court failed to conduct a proper review of the motion [for summary judgment]." The district court's summary judgment order clearly discussed all of the issues R.P. has raised on appeal. Therefore, the combination of R.P.'s memo in support of her motion for reconsideration and the contents of the district court's summary judgment order provided AHISD with notice of the issues R.P. raises on appeal. That R.P. ultimately chose not to appeal all of the issues analyzed in the district court's order does not alter our analysis.

Accordingly, we hold that R.P. satisfied our liberal notice of appeal requirements, and we now consider the merits of her appeal.

## B.    Free Appropriate Public Education

One of the purposes of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). As "a local educational agency responsible for complying with the IDEA as a condition of the State of Texas' receipt of federal education funding," AHISD must "provide each disabled child within its jurisdictional boundaries with a free appropriate public education tailored to his unique needs . . . ." *Michael F.*, 118 F.3d at 247 (citation and internal quotation marks omitted). A student's "individual education program" ("IEP") is the method by which a school system implements these requirements. *See* 20 U.S.C. § 1414(d).

The FAPE required by the IDEA "need not be the best possible one, nor one that will maximize the child's educational potential; rather, it need only be an education that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." *Michael F.*, 118 F.3d at 247-48 (citing *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 188-89 (1982)). "Nevertheless, the educational benefit to which the [IDEA] refers and to which an IEP must be geared cannot be a mere modicum or *de minimus*; rather an IEP must be likely to produce progress, not regression or trivial educational advancement." *Id.* at 248 (citation and internal quotation marks omitted).

When a parent challenges the appropriateness of an IEP, we first determine whether the state has complied with the IDEA's procedural requirements. *V.P.*, 582 F.3d at 583 (citation omitted). Then, we determine "whether the IEP developed through such procedures was reasonably calculated to enable the child to receive educational benefits." *Id.* (citation and internal quotation marks omitted). We have identified four factors "that can serve as

indicators of whether an IEP" satisfies the substantive inquiry: "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated." *Michael F.*, 118 F.3d at 253.

### 1.    Procedural requirements

We first evaluate whether AHISD complied with the IDEA's procedural requirements.  R.P. has not explicitly identified any claims as procedural. However, R.P. does argue that her parents were not permitted to participate fully in ARD committee meetings.  We interpret this issue as a procedural one and will evaluate it as such.  She makes four arguments in support of this contention: (1) that Jones prematurely terminated ARD meetings; (2) that AHISD improperly used voting at the ARD meetings to approve IEPs instead of seeking consensus; (3) that her parents' input was not meaningfully considered; and (4) that decisions about her IEPs were made prior to the ARD meetings.  We address these arguments in order.

One of the purposes of the IDEA is "to ensure that the rights of children with disabilities and parents of such children are protected."  20 U.S.C. § 1400(d)(1)(B).  The IDEA thus "imposes extensive procedural requirements designed to guarantee parents . . . an opportunity for meaningful input into all decisions affecting their child's education . . . ." *Buser v. Corpus Christi Indep. Sch.*, 51 F.3d 490, 493 (5th Cir. 1995) (citation and internal quotation marks omitted).  These procedures require that the parents of a child with a disability have the opportunity "to participate in meetings with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child . . . ." 20 U.S.C. § 1415(b)(1); *see also* 34 C.F.R. § 300.501 (b)(1) (same).  However, "procedural

defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity." *Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 812 (5th Cir. 2003) (citations and internal quotation marks omitted).

First, we address R.P's argument that ARD meetings were improperly terminated early. The district court found that "R.P. fails to demonstrate how any alleged premature termination of meetings resulted in the denial of a FAPE." We hold that the district court did not err in this finding. There is no question that R.P.'s parents and AHISD employees had a history of tension. We do not doubt that R.L.P., who attended the ARD meetings, was often frustrated with AHISD, and a review of the ARD meeting tapes shows that AHISD employees occasionally fueled this frustration. It is also true that AHISD employees dedicated significant time and effort to preparing for and participating in ARD committee meetings and usually sought to work cooperatively with R.P.'s parents. In his efforts to be an effective advocate for his daughter, R.L.P. sometimes allowed his emotions to thwart resolution of the educational issues.

With this background, we hold that AHISD did not deny R.P. a FAPE when Jones occasionally ended meetings early due to R.L.P.'s behavior. We so conclude primarily because AHISD promptly scheduled follow-up meetings at times R.L.P. could attend in order to continue discussing issues related to R.P.'s IEP. These follow-up meetings ensured that R.P. did not lose any educational opportunities and thus, she was not denied the right to a FAPE.[6]

---

[6] We recognize the burden multiple meetings place on parents, and so we do not suggest that scheduling multiple meetings is appropriate as a matter of course. The specific facts of this case, however, indicate that Jones acted appropriately when circumstances warranted a cooling-off period for R.L.P.

No. 11-50956

As to her second argument, R.P. has provided no citations to the record where AHISD personnel voted on her IEP rather than reach consensus. A party's argument must contain appropriate citations to relevant parts of the record. Fed. R. App. P. 28(a)(9). It is not the Court's "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation and internal quotation marks omitted). Therefore, this argument is unavailing.

R.P.'s third and fourth arguments are related. She asserts that AHISD personnel made decisions about her IEP prior to the ARD meetings, and thus her parents' input was not meaningfully considered. Under Federal regulations, not every conversation about a child is a statutorily-defined meeting in which parents must participate. *See* 34 C.F.R. § 300.501(b)(3) ("A meeting also does not include preparatory activities that public agency personnel engage in to develop a proposal or response to a parent proposal that will be discussed at a later meeting."). R.P.'s complaint is similar to, but not as extreme as, the complaint alleged in *Buser*, where a child's parents argued "that the ARD meetings they attended were conducted in such a way that they were led to believe that they would have no impact in the development of their son's IEPs, and that any disagreement they might have with the IEPs would be futile." 51 F.3d at 493. In that case, we held that because the child's parents actively participated in their child's special education program, the school district had complied with the IDEA's procedural requirements. *Id.* at 494; *see also Adam J.*, 328 F.3d at 813 (finding IDEA's procedural requirements were "substantially satisfied" where child's parent was present at every ARD meeting and his parents "frequently submitted supplemental 'parent statements' to express their concerns and frustrations").

We reach the same conclusion here. The record shows that AHISD held numerous ARD meetings for R.P., all of which included R.L.P., who had

11

numerous opportunities to voice his thoughts about R.P.'s IEPs. Changes R.P.'s parents proposed were incorporated into R.P.'s IEPs. Thus, R.P.'s third and fourth arguments are unavailing as well.

We thus find that as to the alleged defects R.P. raises on appeal, AHISD did comply with the IDEA's procedural requirements. Moreover, if any defects did exist, we conclude that they did not rise to the level of denying R.P. a lost educational opportunity.

## 2. Substantive requirements

Having considered R.P.'s procedural claims, we now analyze R.P.'s substantive claims under the *Michael F.* factors. We first note that R.P. does not advance her claims on appeal using the *Michael F.* framework nor did the district court explicitly conduct such an analysis. However, "[w]e are not limited to the district court's reasons for its grant of summary judgment and may affirm the district court's summary judgment on any ground raised below and supported by the record." *Cambridge Integrated Servs. Group, Inc. v. Concentra Integrated Servs., Inc.*, No. 11-31032, – F.3d –, 2012 WL 4378128, at *4 (5th Cir. Sept. 26, 2012) (citation and internal quotation marks omitted). It does not appear R.P. has alleged any violations of the second[7] or third[8] factors, so we do not consider them.

---

[7] Whether the program is administered in the least restrictive environment.

[8] Whether the services are provided in a coordinated and collaborative manner by the key stakeholders. We note, however, that the multiple claims discussed earlier as asserted procedural violations of the IDEA could also reasonably be construed as claims relevant to this factor. To the extent that R.P.'s allegations that some ARD meetings were terminated early, that voting was used to make decisions rather than seeking consensus, and that AHISD personnel made decisions before meetings and did not consider R.P.'s parents' input could be construed as claims relevant to this factor, they are unavailing. For the same reasons that these claims do not constitute procedural violations of the IDEA, they also do not demonstrate that the educational services were not provided in a sufficiently coordinated and collaborative manner by key stakeholders, including R.P.'s parents.

No. 11-50956

*a.     Factor 1: Program individualized on the basis of the student's assessment and performance*

R.P. alleges AHISD failed to complete a required AT evaluation by its October 1, 2008 deadline. She also alleges AHISD did not complete a FBA before instituting a BIP. Thus, R.P. essentially argues that AHISD failed to create an individualized program because it did not conduct the assessments necessary to create one. We first analyze R.P.'s AT evaluation argument.

The IDEA defines assistive technology service as "any service that directly assists a child with a disability in the selection, acquisition, or use of an assistive technology device." 20 U.S.C. § 1401(2). It includes "the evaluation of the needs of such child, including a functional evaluation of the child in the child's customary environment." 20 U.S.C. § 1401(2)(A). Such services, if necessary, are part of providing a FAPE to a child with a disability. *See* 20 U.S.C. § 1400(d)(1)(A).

Whether AHISD had completed an AT evaluation by October 1, 2008 was a point of considerable discussion at the due process hearing. The hearing officer found that "[t]he record in this case was confused by the semantic[] difference between an 'Assistive Technology Evaluation' and an 'Augmentative Communication Evaluation.'" He concluded that "the record shows that [AHISD] performed an AT evaluation for communication timely, in October 2008 . . . ." The hearing officer does not support his conclusion with citations to the record. The district court did not address whether the AT evaluation was completed by October 1, 2008.[9]

---

[9] The district court assessed whether R.P. was provided an AT evaluation by October *2009.* The district court noted that R.P. did not raise this as an issue at the due process hearing and found, in the alternative that, even if it were raised, R.P. failed to demonstrate how this delay resulted in a denial of a FAPE.

We agree with R.P. that the district court clearly erred as to the date the AT evaluation was due.

No. 11-50956

After reviewing the extensive record, it is unclear to us whether AHISD completed the AT assessment by October 1, 2008. However, more important, what is clear is that there is no evidence that AHISD personnel discussed the evaluation at a Fall 2008 ARD meeting in order to incorporate the results into R.P.'s 2008-2009 IEP.[10] Instead, AHISD personnel presented the AT assessment's results at the late May 2009 ARD meeting, at which time the committee was preparing for Fall 2009. The ARD committee requested the AT evaluation be completed by October 2008. It is not hard to infer this date, early in the school year, was selected so that the assessment's results could be incorporated into R.P.'s 2008-2009 IEP. This apparently was not done. We thus hold that R.P.'s IEP was not sufficiently individualized because this assessment, which the ARD committee required AHISD to complete, was not presented to the ARD committee or incorporated into R.P.'s 2008-2009 IEP.

R.P.'s second argument is that AHISD failed to conduct an FBA before developing a BIP. The district court found that R.P. was a "model student" who did not require an FBA. The district court concluded in the alternative that even if R.P. did require an FBA, she failed to establish that its absence resulted in the denial of a FAPE.

The IDEA requires a child's IEP team to "consider the use of positive behavioral interventions and supports, and other strategies, to address [the]

---

[10] In its brief, AHISD directs us to two documents in the record and an ARD meeting tape to demonstrate it completed the AT assessment on time. The documents are from ARD meetings held in May and June 2009, at which time there was an "update" on the AT assessment that was allegedly presented at the October 14, 2008 ARD. There is no evidence in the October 2008 ARD meeting minutes that the AT assessment was presented. Moreover, on the ARD tape, AHISD personnel admit that there was no discussion of the assessment at that Fall 2008 ARD meeting. The January 2009 e-mail from Houser, asking about the status of the assessment, also confirms that it was not discussed at any of the Fall 2008 ARD meetings. Thus, it is not difficult for us to conclude that AHISD never presented the AT evaluation at a 2008-2009 ARD meeting such that it was appropriately incorporated into R.P.'s 2008-2009 IEP.

behavior" of a "child whose behavior impedes the child's learning or that of others . . . ." 34 C.F.R. § 300.324(a)(2)(i); *see also* 20 U.S.C. § 1414(d)(3)(B)(i) (same). An FBA is required, "as appropriate," when a child has been "removed from the child's current placement" for more than ten days due to disciplinary infractions. 34 C.F.R. § 300.530(d)(1)(ii).

The record contains ample evidence and testimony that R.P. was a well-liked, well-behaved student. There is no evidence that R.P. was removed from her educational placement due to disciplinary infractions. Therefore, AHISD complied with the federal statute. R.P. has not cited to any Texas regulations pertaining to FBAs, so she has waived any issue that AHISD did not comply with state law. *See* Fed. R. App. P. 28 (requiring briefs to contain citations to authority). But even if she had not waived this issue, we agree with the hearing officer that R.P.'s BIP was designed, at least in part, to comply with Texas IEP regulations. *See* 19 Tex. Admin. Code § 89.1040(c)(1) (2012) (requiring "specific recommendations for behavioral interventions and strategies" for students with autism, like R.P.). AHISD created a BIP for R.P. in Spring 2009 based on observations, record review, and data analysis. The BIP  also contains an antecedent list and replacement behaviors. These are all acceptable ways of evaluating a child's behavioral needs under Texas regulations. *See* 19 Tex. Admin. Code § 89.1055 (2012) (listing "antecedent manipulation, replacement behaviors, reinforcement strategies, and data-based decisions" as examples of appropriate means of developing positive behavior support strategies). The regulations suggest—but do not require—that an FBA be used to develop a BIP. 19 Tex. Admin. Code § 89.1055 (2012). Thus, it appears that AHISD complied with both federal and state requirements in developing R.P.'s BIP.

Our above discussion leaves us with a mixed result at the conclusion of our analysis of *Michael F.*'s first factor. We held that AHISD's failure to incorporate the required AT assessment into R.P.'s 2008-2009 IEP indicated that its program

was not sufficiently individualized for R.P., but we also held that AHISD's decision not to conduct an FBA before preparing R.P.'s BIP did not demonstrate a lack of individualization. Our analysis as to whether R.P. was denied a FAPE does not end here. Instead, we continue to analyze R.P.'s claims under the fourth *Michael F.* factor.

b.      *Factor 4: Positive academic and non-academic benefits are demonstrated*

Whether a student demonstrates positive academic and non-academic benefits is "one of the most critical factors in this analysis." *V.P.*, 582 F.3d at 588. R.P. asserts that because AHISD did not timely complete its AT evaluation, she was denied the use of a speech output device for over a year. This, she asserts, delayed her educational progress. As evidence, C.P. testified that R.P.'s vocabulary significantly expanded after R.P. began working consistently with the DynaVox, and the record demonstrates that R.P.'s teachers noted her progress when she used the DynaVox. We note that R.P. does not appear to have raised any concerns related to her BIP under this factor.

The district court found that R.P.'s argument that she was deprived of an AT device for one year is "contradicted by the record [because] R.P. was successfully using" PECS in the classroom during this time frame. Our review of the record shows that the district court did not clearly err in this factual finding.[11] The record contains ample evidence that R.P. demonstrated positive academic and non-academic benefits from her use of AT devices, including PECS, between Fall 2008 and Fall 2009, the period that elapsed before an AT evaluation was incorporated into her IEP.

---

[11] As an initial matter, we note that IDEA defines AT devices broadly, and the PECS fits within its definition. At oral argument, R.P.'s counsel conceded that his argument failed if we concluded PECS is an AT device. Even though we conclude that it is, we continue to evaluate this claim on its merits because finding PECS is an AT device does not answer whether R.P. was making academic and non-academic progress.

As of Fall 2008, R.P. had been using PECS for several years and she continued to make progress with the system. For example, R.P.'s speech therapist testified that over the course of her third grade year, R.P. became more independent at communicating her wants and needs to school personnel other than her primary teacher. Under Supreme Court and circuit precedent, the question here is not whether R.P. maximized her educational potential when she used PECS between Fall 2008 and Fall 2009. Rather, the question is whether she demonstrated more than de minimus positive academic and non-academic benefits. *See Michael F.*, 118 F.3d at 248 (citation and internal quotation marks omitted). That R.P. made greater strides with a voice output device is an indication that PECS was perhaps not allowing her to reach her maximum educational potential. However, achieving one's maximum educational potential is not what is required by law. *See Rowley*, 458 U.S. at 200. We hold that R.P. did demonstrate positive academic and non-academic benefits while using the PECS. Based on our review of the record, we are not "left with a definite and firm conviction that a mistake has been committed" regarding whether R.P. received an educational benefit from her IEP with respect to her use of AT devices. *V.P.*, 582 F.3d at 583.

c. *Summary*

In summary, the only *Michael F.* factor weighing somewhat in favor of concluding that R.P. was denied a FAPE is the first factor. There, we held that AHISD had not sufficiently individualized R.P.'s educational program on the basis of her assessment because AHISD had not discussed or incorporated a required AT assessment into R.P.'s 2008-2009 IEP. In analyzing the same factor, we also held that R.P.'s argument about AHISD's failure to conduct an FBA before designing her BIP was unavailing. Therefore, of the two arguments R.P. raised as to the first factor, only one weighed in her favor. R.P. did not raise any issues under *Michael F.*'s second and third factors. Finally, we held that

R.P. had received an educational benefit from her 2008-2009 IEP under *Michael F.*'s fourth, most critical factor. While AHISD's handling of the Fall 2008 AT assessment was not optimum, we hold, based on the specific facts presented here, that when all the relevant factors are evaluated together, that R.P. received a FAPE.

## IV. Conclusion

For the above reasons, we hold that R.P. was not denied a free appropriate public education for the issues she raised on appeal. The district court's judgment is AFFIRMED.