# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60203

United States Court of Appeals
Fifth Circuit

**FILED**

February 7, 2020

Lyle W. Cayce
Clerk

LALANGIE HOSKINS,

      Plaintiff - Appellant

v.

GE AVIATION,

      Defendant - Appellee

Appeals from the United States District Court
for the Northern District of Mississippi
USDC No. 3:17-CV-224
USDC No. 3:18-CV-99

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

LaLangie Hoskins, *pro se*, sued her employer, GE Aviation, asserting claims under the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964. The district court granted summary judgment for GE, and Hoskins now appeals. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-60203

## I.    Background

GE hired Hoskins as an hourly production associate at its Batesville, Mississippi, facility in August 2013.  During her employment, this facility had a workplace harassment policy, a Composite Operations Site Handbook, and an integrity program called The Spirit & The Letter.  Employees were expected to raise any concerns about policy violations as promptly as possible.  Hoskins received a copy of the handbook during orientation and an updated version in 2016.  The site also followed GE's ADA compliance policy, which was available to all employees online and was referenced in the handbook.  The ADA compliance policy provided for an "interactive dialogue" for determining what reasonable accommodations were appropriate for employees who requested them.  This process could require "submission of medical information completed by the treating physician" and other information.

The site also limited absences or tardiness not covered by a benefit program such as the ADA or the Family and Medical Leave Act ("FMLA").  Excessive unexcused absenteeism was defined as more than eight missed work hours in a ninety-day period or thirty-two hours in a year.  Excessive tardiness referred to two occasions in a seven-day period or four in a thirty-day period when the employee was late or left early by less than one hour.

In June 2014, Hoskins received a "coaching discussion," the company's first level of disciplinary action, for taking an unauthorized break.  Hoskins reported that other members of her team had tried to set her up and called her lazy, and she recounted an incident of sexual harassment.

In April 2016, Hoskins filed a Charge of Discrimination against GE with the EEOC in which she alleged sexual harassment and sex discrimination based on incidents between August 2014 and April 2016.  She also claimed that she was disciplined in retaliation for her complaint.  She later amended the

2

No. 19-60203

charge to include an allegation of "sexual physical touching by a co-worker" in April 2016, to which GE had done nothing in response. The EEOC eventually closed the file because it was unable to find a statutory violation.

Shortly after the first EEOC charge, the company investigated Hoskins's complaints. The investigation entailed interviewing sixteen employees, including Hoskins and the complained-of individuals, and reviewing documentary evidence. The investigators could not confirm any of the allegations. Notably, they concluded after reviewing time sheets that Hoskins's allegation of grabbing or slapping in 2016 "could not have occurred in the timeframe she alleged it happened." The company nevertheless recommended additional training on GE's policies.

Later that year, GE approved Hoskins to take intermittent FMLA leave from May through August 2016, provided she gave notice of the same. Hoskins received disciplinary warnings for failing to report instances of leave, and as a result, she was cited for violating the company's attendance policy. She had also received a few other work-related citations and warnings in 2016. Nevertheless, GE granted Hoskins another period of intermittent FMLA leave from September 2016 through February 2017.

Before the expiration of her FMLA leave, Hoskins began the process of requesting an ADA accommodation for additional time off. In January, a Dr. Linder filled out the ADA forms provided by GE. He reported the duration of Hoskins's condition as both "unknown" and two to three months, and the basis of the diagnosis was Hoskins's self-reporting her inability to work due to anxiety.

GE requested additional information from Dr. Linder to substantiate Hoskins's accommodation request and determine what type of accommodation might be appropriate. The company also informed Hoskins that her request

3

could not be approved based only upon the information Dr. Linder provided and that if not supported by medical documentation, her past absences would be considered unexcused. Hoskins ultimately failed to provide any additional medical support despite extensions of time to do so.

One month after the final deadline passed unmet, GE fired Hoskins for myriad unexcused absences. She had missed 298.88 hours in the last 365 days, 296 of which had occurred in the last ninety days. GE concluded that her "excessive absenteeism and . . . repeated attendance policy violations following [her Decision-Making Leave][1] ma[de] termination appropriate."

Hoskins filed suit against GE and two individual employees in November 2017, alleging violations of the ADA and discrimination in violation of Title VII of the Civil Rights Act of 1964.[2] The district court soon dismissed the claims against the two individuals, a ruling not before us. The district court then granted summary judgment for GE on each of Hoskins's claims and on a hypothetical FMLA interference claim. *Hoskins v. GE Aviation*, No. 3:17-CV-00224, 2019 WL 1339246, at *3–8 (N.D. Miss. Mar. 25, 2019). Hoskins timely appealed.

## II.    Standard of Review

We review a district court's grant of summary judgment de novo, using the same standard as the district court and "viewing all facts and evidence in the light most favorable to the non-moving party." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no

---

[1] Decision-Making Leave is "the last step before termination in [GE]'s progressive discipline system."

[2] Hoskins filed two separate lawsuits that the district court consolidated.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *LHC Grp.*, 773 F.3d at 694 (internal quotation marks omitted).

## III.    Discussion

Hoskins makes no clear arguments on appeal and cites the record below only sparingly and largely inaccurately. Although we must construe a *pro se* litigant's briefs liberally, it is not our "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *R.P. v. Alamo Heights Indep. Sch. Dist.*, 703 F.3d 801, 811 (5th Cir. 2012) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). We do not conclude that all of her arguments have been abandoned, but we note that we have limited our review in line with the adequate briefing. As discussed in more detail below, after reviewing the record, we agree with the thorough opinion by the district court and affirm the grant of summary judgment for GE.

### A. Untimely and Barred Claims

Hoskins makes no argument against the district court's holdings that (1) claims based on conduct that occurred before October 15, 2015,[3] did not meet the 180-day deadline for EEOC discrimination charges and (2) claims based on conduct that occurred between July 19, 2016, and January 11, 2017, were barred because they were outside the scope of her EEOC charges. *See Hoskins*, 2019 WL 1339246, at *3–4. She has therefore abandoned any

---

[3] The district court mistakenly referred to both October 15, 2015, and October 15, 2016. The correct date is October 15, 2015, 180 days before Hoskins filed her first EEOC charge on April 13, 2016.

challenge to these holdings. *See Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008) (per curiam) ("Although pro se briefs are afforded liberal construction, even pro se litigants must brief arguments in order to preserve them." (citation omitted)).

## B. Discrimination Based on Race and Sex

Title VII makes it an "unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employee bears the burden of making a prima facie case, using direct or circumstantial evidence, of discriminatory firing. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). If the employee makes her case, the employer must rebut the presumption of discrimination with "a legitimate, nondiscriminatory reason for her termination." *Id.* The employee must then show that the nondiscriminatory reason was pretextual or that her protected characteristic was also a motivating factor for her termination. *Davis v. Farmers Ins. Exch.*, 372 F. App'x 517, 519 (5th Cir. 2010).

The district court held that Hoskins "failed to produce any evidence, either direct or circumstantial, that she was terminated based on her race or her gender." *Hoskins*, 2019 WL 1339246, at *4. We agree. Her only evidence of racial discrimination, aside from her own subjective belief, was that a white, male employee who was hit by a co-worker and suffered a neck injury was promptly given workers' compensation and an accommodation. However, nothing suggests that the employee was similarly situated, as Hoskins did not claim a similar injury supporting workers' compensation. She also alleged that GE was "selective" about who worked overtime and that her training was inferior to other employees'. GE's investigation revealed no evidence of either allegation. Hoskins also claimed that the employee who grabbed her buttocks

No. 19-60203

was promoted, but Hoskins herself never applied for a promotion. This evidence does not create a prima facie case that Hoskins was fired based on her race or gender. Even if she had made a prima facie case, Hoskins did not produce any evidence that GE's non-discriminatory reason for her firing— excessive absences and tardiness—was pretextual or that race was also a motivating factor.

## C. Sexually Hostile Work Environment

When a claim of a sexually hostile work environment under Title VII is based upon conduct of co-workers, an employee must make a prima facie case by presenting facts showing that

> (1) she is [a] member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (internal quotation marks omitted). The fourth element requires that the conduct be so "severe or pervasive" that it "alter[s] the conditions of the victim's employment and create[s] an abusive working environment." *Id.* (brackets omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

The district court concluded that Hoskins had failed to satisfy elements four and five. *See Hoskins*, 2019 WL 1339246, at *5. The court held that, although undoubtedly offensive, the few isolated incidents over two years were neither severe nor pervasive enough to create an objectively hostile or abusive working environment. *Id.*; *see Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) ("To be actionable, the challenged conduct must be both objectively . . . and subjectively offensive[.]").

7

No. 19-60203

We need not address the fourth element because even if Hoskins had shown severe or pervasive harassment, GE's thorough investigation, after which it recommended additional training on the company's policies despite failing to substantiate the allegations, demonstrates that the company took prompt remedial action. Hoskins did not raise a material fact dispute to the contrary, nor did she present evidence that the harassment continued afterward. *See Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 616 (5th Cir. 1999) (holding that remedial action was sufficient when it was reasonably calculated to, and in fact did, abate the harassment). Hoskins failed to make a prima facie case under Title VII.

### D. Retaliation

Both Title VII and the ADA prohibit employers from discriminating against an employee for filing an EEOC charge. *See* 42 U.S.C. §§ 2000e-3(a), 12203; *Grubic v. City of Waco*, 262 F. App'x 665, 666 n.6 (5th Cir. 2008) (per curiam) (noting that the same analysis governs ADA and Title VII retaliation claims). A plaintiff claiming retaliation under either statute must make a prima facie case by presenting facts showing that she (1) engaged in a protected activity and (2) suffered an adverse employment action that was (3) causally connected to the protected activity. *Grubic*, 262 F. App'x at 666–67, 666 n.6. If the employee makes a prima facie case, the employer then "must give a legitimate, nondiscriminatory reason for its adverse action," and if it does, the plaintiff must present facts showing that the explanation is pretextual. *Id.* at 667. The district court held that although Hoskins engaged in the protected activity of filing an EEOC charge and was later fired, there was no evidence of a causal connection between the two. *Hoskins*, 2019 WL 1339246, at *5–6. We agree, and Hoskins points to no evidence to the contrary.

8

### E. Disability Claims

#### 1. ADA Reasonable Accommodation

The ADA makes it unlawful for a covered employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). It requires an employer to provide "reasonable accommodations" to "an otherwise qualified individual" with a disability known by the employer. *Id.* § 12112(b)(5)(A); *Feist v. La. Dep't of Justice*, 730 F.3d 450, 452 (5th Cir. 2013). When an employee requests an accommodation, the employer must engage the employee in an "interactive process," or a "flexible dialogue," to determine an appropriate accommodation. *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016). If a breakdown in this process "is traceable to the employee," the employer is protected from liability. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999).

We agree with the district court that Hoskins failed to raise a material fact dispute about whether GE failed to make a reasonable accommodation. *See Hoskins*, 2019 WL 1339246, at *7–8. GE and Hoskins engaged in an interactive dialogue, but it was not clear how much time off Hoskins requested. Her doctor's notes suggest that it might have been indefinite, which is manifestly not a reasonable accommodation. *See Delaval*, 824 F.3d at 482. GE repeatedly requested adequate documentation to no avail. If an employee fails to provide requested documentation to substantiate a claim of disability and thereby causes a breakdown in the interactive process, the employer has not violated the ADA. *Id.* at 482–83. Because Hoskins caused the interactive process to break down, both by not clarifying what accommodation she needed and failing to substantiate her request, we conclude that she has failed to raise a fact question about GE's alleged failure to provide a reasonable accommodation.

*2. Discharge Based on Disability*

The district court also granted summary judgment for GE to the extent that Hoskins claimed that she was fired because of her disability. *Hoskins*, 2019 WL 1339246, at *8. Such a claim involves a burden-shifting framework similar to many of the claims discussed above: The plaintiff must first make a prima facie case by showing that "(1) [s]he had a disability, (2) [s]he was qualified for the job, and (3) there was a causal connection between an adverse employment action and h[er] disability." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 765 (5th Cir. 2016). Then, if the employer offers a nondiscriminatory reason for the employment action, the plaintiff must offer evidence that the reason is pretextual. *Id.* As with her retaliation claim, Hoskins presented no evidence that her termination was causally connected with her disability. To the contrary, GE made numerous efforts to accommodate her disability but eventually fired her because of excessive unexcused absences and tardiness. As discussed above, Hoskins caused the accommodations discussion to break down. She failed to make a prima facie case that she was fired because of her disability.

*3. FMLA Interference*

At GE's request, the district court granted the company summary judgment on any potential claim that GE interfered with Hoskins's FMLA entitlements. *Hoskins*, 2019 WL 1339246, at *8. Because Hoskins neither asserted such a claim in her complaint nor mentions it in her brief on appeal, she has abandoned any potential appeal of this holding. *See R.P.*, 703 F.3d at 811. Regardless, any such claim would lack merit because GE never denied Hoskins FMLA leave. *See DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (holding that an FMLA interference claim requires that the

No. 19-60203

employer deny the employee the FMLA benefits to which she was entitled).

AFFIRMED.