# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 2, 2025

Lyle W. Cayce
Clerk

No. 22-60067

Tamatha Moore-Watson, *as Next Friend of* M.W., *A Minor*,

　　　　　　　　　　　　　　　　*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Rankin County Public School District,

　　　　　　　　　　　　　　　　*Defendant—Appellee/Cross-Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:19-CV-107

_____

Before Stewart, Richman, and Haynes, *Circuit Judges*.
Priscilla Richman, *Circuit Judge*:[*]

　　Tamatha Moore-Watson (Moore-Watson) brings this case under the Individuals with Disabilities Education Act (IDEA) on behalf of her child, M.W. She alleges that M.W.'s school district failed to fulfill its obligations under Child Find and failed to provide M.W. with a Free Appropriate Public Education (FAPE). At a due process hearing, the hearing officer found

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

against Moore-Watson on both claims. Therefore, the hearing officer did not award Moore-Watson tuition reimbursement.

The district court reversed the hearing officer's judgment in part, finding that the school district failed to fulfill its Child Find obligations and did not provide M.W. with a FAPE. The district court did not award Moore-Watson tuition reimbursement. However, it found that Moore-Watson was a prevailing party and therefore that she was entitled to attorneys' fees. We affirm the district court's judgment.

## I

The IDEA "seeks 'to ensure that all children with disabilities have available to them a [FAPE].'"[1] Under the IDEA, schools must identify disabled children, evaluate them, and create an Individualized Education Plan (IEP) for each disabled child.[2] The process of identifying disabled children is known as "Child Find."[3]

Moore-Watson is M.W.'s mother. M.W. began attending school in the Rankin County School District (District) when he was in kindergarten. While in kindergarten, he failed a routine dyslexia screener. Moore-Watson was not informed of the failed screener at that time. The parties dispute whether a second screener was administered in first grade, which the District claims M.W. passed.

M.W. began to struggle academically in first grade. At that time, the District provided Tier 2 intervention in reading, which involved smaller

---

[1] *Krawietz ex rel. Parker v. Galveston Indep. Sch. Dist.*, 900 F.3d 673, 674 (5th Cir. 2018) (quoting *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 965 (5th Cir. 2016)).

[2] 20 U.S.C. §§ 1412(a)(3), 1414.

[3] *See id.* § 1412(a)(3).

group instruction with his classroom teacher. When M.W. entered second grade, the District continued to provide Tier 2 intervention in reading. Additionally, Moore-Watson hired a tutor for M.W. However, M.W. continued to struggle academically. Four weeks into M.W.'s second-grade year, the District added Tier 2 support in math, and eight weeks into the year, it moved him to Tier 3 support in reading. At Tier 3, M.W. was removed from class for thirty minutes per day for one-on-one or small-group support from an interventionist.

M.W.'s second-grade teacher informed a speech therapist at the school that M.W. possibly needed speech assistance. M.W. was evaluated for language/speech services, and the evaluation indicated that he was eligible for special education. In November, an IEP was developed to provide speech services for M.W. This testing and IEP did not include dyslexia or ADHD testing or services, and an academic interventionist stated at M.W.'s due process hearing that she did not see characteristics of dyslexia in M.W.

According to Moore-Watson and credited by the district court, M.W.'s tutor observed signs of dyslexia in M.W. Moore-Watson alleges that she informed the school of the tutor's observations and that M.W. needed additional interventions. However, the District did not test M.W. for dyslexia or provide him with services related to dyslexia.

Moore-Watson arranged for M.W. to be assessed by the Mississippi Dyslexia Center in February, at which time M.W. failed the Center's dyslexia screener. After conducting multiple tests, the psychometrist concluded that M.W. had mild dyslexia and ADHD.

In March, Moore-Watson informed the District of M.W.'s dyslexia diagnosis and asked that he be considered for therapy or accommodations. In response, a counselor submitted a Child Find request to the District's

psychometrist. Later that month, the District held a meeting to discuss whether M.W. needed further testing or services. Ultimately, the District decided not to test M.W. for dyslexia. The District claims that had it conducted testing, the tests would have been very similar to or the same as those conducted by the Mississippi Dyslexia Center.

The District concluded that the services M.W. was already receiving were "the most appropriate intervention to meet his needs." The District further concluded, based on M.W.'s independent IQ testing, that M.W. did not have a "severe" discrepancy between his intellectual ability and his achievement. Therefore, the District found M.W. did not have a "specific learning disability" in dyslexia such that the District would be required to provide services under the IDEA. Based on the District's rubric, M.W. did not qualify for general education dyslexia services. Although the District implemented a § 504 plan for M.W., that plan did not include dyslexia services or accommodations.[4] The District did not recommend changes to M.W.'s IEP or Tier 3 interventions to address dyslexia or ADHD.

Over the course of second grade, M.W.'s standardized testing scores improved by less than one grade level, and he continued to receive the grade of "unsatisfactory" in his classes. Although M.W. was not promoted to third grade, the District planned to continue the same Tier 3 services the following school year. At the beginning of May, Moore-Watson informed the District that M.W. would be attending New Summit School, a private school.

---

[4] *See Spring Branch Indep. Sch. Dist. v. O.W. ex rel. Hannah W.*, 961 F.3d 781, 786 n.3 (5th Cir. 2020) ("Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), 'broadly prohibit[s] discrimination against disabled persons in federally assisted programs or activities.'" (alteration in original) (quoting *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010))).

No. 22-60067

That September, Moore-Watson filed a due process complaint. After a hearing, the hearing officer stated that Moore-Watson did not show that the District failed (1) to meet its obligations under Child Find, (2) to provide the least restrictive learning environment for M.W., and (3) to provide a FAPE. Accordingly, the hearing officer concluded that the District was not required to pay for M.W.'s tuition at New Summit School.

The district court found that the District violated its Child Find obligations and failed to provide a FAPE. It awarded attorneys' fees and related expenses to Moore-Watson and ordered that the District reimburse Moore-Watson for the costs paid for the independent dyslexia assessment. It also ordered that if M.W. re-enrolls in the District, the District must evaluate M.W. for dyslexia and ADHD, develop a new IEP to address any dyslexia or ADHD issues uncovered, and review the IEP if M.W. is not making sufficient progress. However, it found that Moore-Watson failed to establish that New Summit School was an appropriate placement for M.W., so the court did not award tuition reimbursement.

Both Moore-Watson and the District timely appealed. This court has jurisdiction under 28 U.S.C. § 1291.

## II

For a disabled child, a FAPE requires an IEP "'tailored to the unique needs' of [that] particular child."[5] "Each IEP must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the

---

[5] *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391 (2017) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181 (1982)); *see also Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. ex rel. Barry F.*, 118 F.3d 245, 247 (5th Cir. 1997).

school will provide."[6]  An IEP must be designed to achieve "meaningful" education,[7] which "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[8]  Further, it must be "appropriately ambitious."[9]  For a child "fully integrated in the regular classroom," this means that the IEP typically should be "reasonably calculated to enable the child to achieve passing marks and advance from grade to grade."[10]

To determine "whether an IEP is reasonably calculated to provide a meaningful educational benefit under the IDEA," our court considers whether: "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated."[11]  The four factors must be

---

[6] *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005) (citing 20 U.S.C. § 1414(d)(1)(A)).

[7] *Michael F.*, 118 F.3d at 248 (quoting *Polk v. Cent. Susquehanna Intermediate Unit 16*, 853 F.2d 171, 182 (3d Cir. 1988)).

[8] *Endrew F.*, 580 U.S. at 403; *see also id.* at 402-03 ("When all is said and done, a student offered an educational program providing 'merely more than *de minimis*' progress from year to year can hardly be said to have been offered an education at all. . . . The IDEA demands more."); *Michael F.*, 118 F.3d at 248 ("[T]he educational benefit . . . to which an IEP must be geared cannot be a mere modicum or *de minimis*; rather, an IEP must be 'likely to produce progress, not regression or trivial educational advancement.'" (footnote omitted) (quoting *Bd. of Educ. of E. Windsor Reg'l Sch. Dist. v. Diamond ex rel. Diamond*, 808 F.2d 987, 991 (3d Cir. 1986))).

[9] *Endrew F.*, 580 U.S. at 402.

[10] *Id.* at 401 (quoting *Rowley*, 458 U.S. at 204).

[11] *Michael F.*, 118 F.3d at 253; *see Leigh Ann H. ex rel. K.S. v. Riesel Indep. Sch. Dist.*, 18 F.4th 788, 798 (5th Cir. 2021) (applying *Michael F.* factors post-*Endrew F.*).

evaluated "in conjunction with" the standards set forth by the Supreme Court, described above.[12]

This court "review[s] de novo, as a mixed question of law and fact, a district court's decision that a local school district's IEP was or was not appropriate . . . under the IDEA."[13]  However, "[t]he district court's findings of underlying fact, such as findings that a disabled student obtained educational benefits under an IEP, are reviewed for clear error."[14]  "We will not reverse underlying [fact] findings unless we are 'left with a definite and firm conviction that a mistake has been committed.'"[15]

In looking at factor one, the district court concluded that the program was not individualized because the kindergarten dyslexia screener, the evaluation by the Mississippi Dyslexia Center, and the private tutor's observations of signs of dyslexia were not considered in the IEP.  The court found it insufficient that the IEP addressed only M.W.'s communication needs.[16]  Factor two, regarding the least restrictive environment, is not disputed and weighs in favor of finding for the District.  Regarding factor three, the district court concluded that key stakeholders were sometimes included but that (1) "Moore-Watson's request for a re-evaluation of M.W. after the independent dyslexia diagnosis was effectively denied";

---

[12] *See E.R. ex rel. E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 765-67 (5th Cir. 2018) (per curiam).

[13] *Michael F.*, 118 F.3d at 252 (italics omitted); *see also Dall. Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 309 (5th Cir. 2017).

[14] *Michael F.*, 118 F.3d at 252.

[15] *Woody*, 865 F.3d at 309 (quoting *R.P. ex rel. R.P. v. Alamo Heights Indep. Sch. Dist.*, 703 F.3d 801, 808 (5th Cir. 2012)).

[16] *See P.P. v. Nw. Indep. Sch. Dist.*, 839 F. App'x 848, 854-55 (5th Cir. 2020) (per curiam).

(2) "despite Moore-Watson['s] efforts to have them included, the 504 Committee did not provide any supports or accommodations relative to dyslexia in M.W.'s 504 plan"; and (3) "the Defendant also did not include the mother in decision-making, nor inform her about M.W.'s failure of the dyslexia screening in his kindergarten year." In assessing the facts as to factor four, which is the most critical factor,[17] the district court questioned whether positive academic and non-academic benefits were demonstrated because (1) M.W. was failing second grade and (2) when the District realized M.W. would fail second grade, it did not adjust his treatment plan. The district court found, in sum, that the education provided to M.W. did not meet the standards outlined in *Endrew F.*

The district court did not clearly err in reaching its findings of fact, and, as the court ably explained, the education provided to M.W. by the District fell short of meeting the standards required by the IDEA. Although the District argues that M.W. demonstrated some progress under his existing IEP, the demonstrated progress falls short of being "appropriately ambitious," especially in light of the District's failure to test M.W. for dyslexia or revise his IEP when it was clear he would fail second grade.

The district court did not err in determining that the District failed to provide M.W. with a FAPE.

### III

A parent who enrolls a child in private school without the consent of the school officials is "entitled to reimbursement *only* if a federal court concludes both that the public placement violated [the] IDEA and [that] the

---

[17] *See Renee J. ex rel. C.J. v. Hous. Indep. Sch. Dist.*, 913 F.3d 523, 529 (5th Cir. 2019) ("This court . . . has long held that the fourth factor is critical.").

private school placement was proper under the Act."[18]  The parent bears the burden of establishing that the alternative placement is appropriate.[19]  A placement is appropriate if it meets the FAPE standards described above.[20] However, an appropriate placement does not *necessarily* need to meet all state standards.[21]  This court "review[s] de novo, as a mixed question of law and fact, a district court's decision . . . that an alternative placement was or was not inappropriate under the IDEA."[22]  "The district court's findings of underlying fact . . . are reviewed for clear error."[23]

Both the hearing officer and the district court determined that Moore-Watson did not provide enough evidence to show that New Summit School was an appropriate placement.  Moore-Watson is correct that, under Mississippi Department of Education (MDE) policy, New Summit School could have been an appropriate placement even if its school therapists were not required to be certified.[24]  However, the hearing officer and district court

---

[18] *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246 (2009) (quoting *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 15 (1993)).

[19] *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 51 (2005).

[20] *See Carter*, 510 U.S. at 12-13; *cf. Christopher M. ex rel. Laveta McA. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1289 (5th Cir. 1991); *Rafferty v. Cranston Pub. Sch. Comm.*, 315 F.3d 21, 26-27 (1st Cir. 2002) ("Even if the child makes academic progress at the private school, 'that fact does not establish that such a placement comprises the requisite adequate and appropriate education.'" (quoting *Rome Sch. Comm. v. Mrs. B.*, 247 F.3d 29, 33 (1st Cir. 2001))).

[21] *See Carter*, 510 U.S. at 12-14.

[22] *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. ex rel. Barry F.*, 118 F.3d 245, 252 (5th Cir. 1997) (italics omitted).

[23] *Id.*

[24] *See* Miss. Dep't of Educ., State Policies Regarding Children with Disabilities under the Individuals with Disabilities Education Act Amendments of 2004 § 300.148(c) (2013) ("A parental placement may be found to be appropriate by a hearing officer or a court even if it does not

found that New Summit School was not appropriate because it was not rigorous, had unqualified teachers, and inflated M.W.'s grades, which are factual findings reviewed for clear error. Moore-Watson has not provided evidence to refute these findings of fact.

The district court did not err in denying tuition reimbursement.

## IV

A district court has discretion under the IDEA to award attorneys' fees when the parent of a child with a disability is the prevailing party.[25] This court has found a parent to be a prevailing party such that he "may receive attorneys' fees if he 'attains a remedy' that: (1) 'alters the legal relationship between the school district and the [child with disabilities]'; (2) 'fosters the purposes of the IDEA'; and (3) 'receives judicial imprimatur.'"[26] These requirements can be met when, despite the parent not receiving compensatory relief, the school district is ordered to modify the IEP.[27] We review de novo the legal question of whether a party is a prevailing party.[28]

As described above in Part II, the district court correctly found that the District failed to provide M.W. with a FAPE. The district court ordered that if M.W. re-enrolls in the District, the District must evaluate M.W. for dyslexia and ADHD, develop a new IEP to address any dyslexia or ADHD

---

meet Mississippi's standards that apply to education provided by the MDE and [local educational agencies].").

[25] 20 U.S.C. § 1415(i)(3)(B).

[26] *D.C. v. Klein Indep. Sch. Dist.*, 860 F. App'x 894, 909 (5th Cir. 2021) (alteration in original) (quoting *Lauren C. ex rel. Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 374 (5th Cir. 2018)).

[27] *See id.*; *Krawietz ex rel. Parker v. Galveston Indep. Sch. Dist.*, 900 F.3d 673, 677-78 (5th Cir. 2018).

[28] *Krawietz*, 900 F.3d at 677.

issues uncovered, and review the IEP if M.W. is not making sufficient progress. Such requirements foster the purposes of the IDEA.[29]

Moore-Watson is a prevailing party such that the district court did not err in awarding attorneys' fees.

## V

The relief granted by the district court can be upheld based on the District's failure to provide M.W. with a FAPE. Therefore, this court need not address Moore-Watson's Child Find claim.

\* \* \*

The judgment of the district court is AFFIRMED.

---

[29] *See id.* at 677-78.